UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERSONAL REPRESENTATIVE OF THE
DAWABSHEH FAMILY, *et al.*,

        *Plaintiffs*,

v.

BENJAMIN NETANYAHU, *et al.*,

        *Defendants*.

Case No. 1:20-cv-00555-DLF

**DEFENDANT ANDREW M. CUOMO'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel: (212) 416-6382

*Attorney for Governor Cuomo*

OWEN T. CONROY
Assistant Attorney General
  *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT .................................................................................................................................... 3

   I.   PLAINTIFFS HAVE NOT PROPERLY SERVED GOVERNOR CUOMO WITH THE COMPLAINT AND SUMMONS ................................................................................................ 3

   II.   THE COURT LACKS PERSONAL JURISDICTION OVER GOVERNOR CUOMO. 5
      A.   The Court Does Not Have General Jurisdiction Over Governor Cuomo. ........................ 6
      B.   The Court Does Not Have Specific Jurisdiction Over Governor Cuomo. ....................... 6

   III.   PLAINTIFFS DO NOT HAVE STANDING TO PURSUE A CLAIM AGAINST GOVERNOR CUOMO .................................................................................................................. 9

   IV.   ANY CLAIMS ASSERTED AGAINST GOVERNOR CUOMO IN HIS OFFICIAL CAPACITY ARE BARRED BY SOVEREIGN IMMUNITY ................................................. 10

   V.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST GOVERNOR CUOMO 11
      A.   The Complaint Fails to State a Claim Against Governor Cuomo for Aiding and Abetting a Violation of the ATS .................................................................................... 12
      B.   The Complaint Fails to State a Claim Against Governor Cuomo for Aiding and Abetting a Violation of the TVPA .................................................................................. 13

CONCLUSION ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 11, 12

*Bd. of Trustees of Univ. of Alabama v. Garrett*,
    531 U.S. 356 (2001) ..................................................................................................................... 11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ....................................................................................................................... 9

*Byrd v. D.C.*,
    230 F.R.D. 56 (D.D.C. 2005) ....................................................................................................... 4

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ....................................................................................................................... 6

*Dickerson v. D.C.*,
    70 F. Supp. 3d 311 (D.D.C. 2014) ............................................................................................ 10

*Doe v. Exxon Mobil Corp.*,
    No. CV 01-1357(RCL), 2015 WL 5042118 (D.D.C. July 6, 2015) ................................. 12, 13

*Dominguez v. D.C.*,
    536 F. Supp. 2d 18 (D.D.C. 2008) ......................................................................................... 1, 5

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ..................................................................................................... 8

*Fuentes-Fernandez & Co. v. Caballero & Castellanos*,
    770 F. Supp. 2d 277 (D.D.C. 2011) ............................................................................................. 8

*Gonzalez-Vera v. Kissinger*,
    No. 02-cv-02240 (HHK), 2004 WL 5584378 (D.D.C. Sept. 17, 2004), *aff'd*,
    449 F.3d 1260 (D.C. Cir. 2006) ................................................................................................ 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ....................................................................................................................... 6

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ................................................................................................... 6

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ....................................................................................................................... 7

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...........................................................................................................7

*Jenkins v. Kerry*,
  928 F. Supp. 2d 122 (D.D.C. 2013).................................................................................8

*Lemon v. Kramer*,
  270 F. Supp. 3d 125 (D.D.C. 2017)..............................................................................6, 7

*Ofisi v. BNP Paribas, S.A.*,
  278 F. Supp. 3d 84 (D.D.C. 2017), *order vacated in part,* 285 F. Supp. 3d 240
  (D.D.C. 2018) .................................................................................................................12

*Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*,
  No. 19-CV-1045 (PKC), 2020 WL 1536596 (E.D.N.Y. Mar. 31, 2020) ..................................4

*Terry v. Dewine*,
  75 F. Supp. 3d 512 (D.D.C. 2014)........................................................................4, 8, 11

*Trump v. Comm. on Ways & Means, United States House of Representatives*,
  415 F. Supp. 3d 98 (D.D.C. 2019)..........................................................................5, 6, 7, 8

*Turner v. Abbott*,
  53 F. Supp. 3d 61 (D.D.C. 2014)....................................................................................6, 9

*UMC Dev., LLC v. D.C.*,
  401 F. Supp. 3d 140 (D.D.C. 2019)................................................................................10

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989)..........................................................................................................11

*Willis v. Willis*,
  655 F.2d 1333 (D.C. Cir. 1981)........................................................................................9

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..........................................................................................................7

**CONSTITUTIONAL PROVISIONS**

N.Y. Const. Art. IV, § 2....................................................................................................3

U.S. Const. Amend. XI ...................................................................................................11

**STATE STATUTES**

D.C. Code
  § 13-423 ............................................................................................................................7

**FEDERAL STATUTES**

Alien Tort Statute, 28 U.S.C.
 § 1350 ......................................................................................................................................1

Foreign Agents Registration Act, 22 U.S.C.
 § 611 *et seq.* ..........................................................................................................................1

Torture Victim Protection Act of 1991, 106 Stat. 73 ....................................................................1

**STATE EXECUTIVE ORDERS**

N.Y. Exec. Order No. 157 (June 5, 2016), *available at*
 https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_157
 _new.pdf ................................................................................................................................8

**RULES**

Fed. R. Civ. P. 4(e)(1) ....................................................................................................................4

Fed. R. Civ. P. 4(k)(1)(A) ...............................................................................................................5

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................11

N.Y. Civil Practice Law and Rules
 § 312-a(a) ...............................................................................................................................4

**PRELIMINARY STATEMENT**

The Complaint in this action is a wide-ranging document that accuses 19 defendants of aiding and abetting war crimes and crimes against humanity in the Middle East in violation of the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Torture Victim Protection Act of 1991 ("TVPA"), 106 Stat. 73, note following 28 U.S.C. § 1350. The vast majority of the allegations do not relate in any way to the Governor of New York ("Governor Cuomo"). Plaintiffs allege three grievances about Governor Cuomo that they assert amount to claims under the ATS and TVPA: that he signed a New York Executive Order directing certain New York State agencies to stop investing in entities that participate in the Boycott, Divestment, Sanctions campaign against Israel; that he allegedly encouraged other governors to enact similar orders; and that did not register as an official agent of Israel under the Foreign Agents Registration Act, 22 U.S.C. § 611 *et seq.* ("FARA"). The claims asserted against Governor Cuomo fail for five, independent reasons.

First, Plaintiffs have not properly served Governor Cuomo with the Complaint and summons. Despite Plaintiffs' failure to properly serve Governor Cuomo, the Court may nevertheless proceed to dismiss the claims against him with prejudice, given the lack of merit to their claims. *See Dominguez v. D.C.*, 536 F. Supp. 2d 18, 22 (D.D.C. 2008).

Second, this Court does not have personal jurisdiction over Governor Cuomo. Plaintiffs have not alleged any facts to support this Court's exercise of general jurisdiction over Governor Cuomo, a New York State official who resides and works in New York. Nor have Plaintiffs alleged any facts demonstrating that any claim asserted against Governor Cuomo arises out of conduct occurring in the District of Columbia, as required for the exercise of specific jurisdiction under the District's long-arm statute.

Third, Plaintiffs lack standing to pursue a claim against Governor Cuomo because they do not allege that they have suffered an injury that is fairly traceable to his conduct.

Fourth, to the extent any claims are asserted against Governor Cuomo in his official capacity, they are barred by sovereign immunity.

Fifth, Plaintiffs have failed to state a claim against Governor Cuomo under any of the causes of action asserted in their Complaint. The conduct they allege he engaged in—signing an Executive Order regarding how New York State agencies invest their funds, encouraging other governors to enact such orders, and not registering as a foreign agent—does not implicate the ATS or the TVPA.

## BACKGROUND

Plaintiffs allege that they are "Palestinian nationals, Palestinian Americans, and average U.S. citizens" who accuse the defendants of "aid[ing] and abett[ing] the commission of numerous war crimes and crimes against humanity" in the Middle East. Compl. pp. 4-5 (ECF No. 1). The Complaint contains various allegations against multiple current and former elected officials and other prominent individuals in the United States and Israel. The vast majority of the allegations do not relate in any way to Governor Cuomo.

Specifically, as to Governor Cuomo, the Complaint alleges that he "signed an executive order which precludes any American citizen from doing business with any New York State agency unless he has first signed an oath of loyalty to Israel." *Id*. ¶ 22. It also alleges that Governor Cuomo "convinced forty governors to enact" similar orders, *id*. p. 12, and that he "has chosen not to register as an official agent of Israel under FARA even though he is certainly doing the business that Israel wants him to do on its behalf . . . ." *Id*. ¶ 156.

Plaintiffs do not allege that Governor Cuomo lives or maintains a principal place of business in the District of Columbia. Nor can they: As Governor of the State of New York, Governor Cuomo is required to reside in New York and his principal place of business is New York. *See* N.Y. Const. Art. IV, § 2 (Governor must be a New York resident). Plaintiffs actually concede that Governor Cuomo is a New York resident. Compl. ¶ 22. The only contact Plaintiffs allege Governor Cuomo has had with the District of Columbia is that he "attended one or more" functions in the District hosted by the American Israel Public Affairs Committee ("AIPAC") at some unspecified point during "the past 20 years." Compl. ¶ 13.

While some of the Plaintiffs allege that they have suffered physical injury and theft of property in the Middle East, Compl. ¶ 14, they do not allege how Governor Cuomo's actions caused them any injury. The Complaint alleges generally that the defendants have "aided and abetted the commission of numerous war crimes and crimes against humanity" in violation of the ATS and the TVPA. *Id*. pp. 4-5. They seek $1 billion in damages against each of the defendants. *Id*. pp. 131 & 159. The Complaint does not specify whether they are suing Governor Cuomo in his individual or his official capacity.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT PROPERLY SERVED GOVERNOR CUOMO WITH THE COMPLAINT AND SUMMONS

Plaintiffs claim to have accomplished service of process on Governor Cuomo by mailing the summons and complaint to the New York State Executive Mansion, via the United States Postal Service. (ECF No. 33). Plaintiffs state that this mailing was delivered on June 12, 2020, and they attach a return receipt containing an illegible signature by an unidentified person. This attempt at service is deficient under the Federal Rules of Civil Procedure and the rules of both the District of Columbia and New York.

Federal Rule of Civil Procedure 4 does not contain a service by mail provision. Instead, it allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). While both the District of Columbia and New York allow for service by mail in certain circumstances, Plaintiffs have not satisfied the requirements of either jurisdiction.

The Civil Rules of the D.C. Superior Court allow for service by mail, *see* D.C. Super. Ct. R. Civ. P. 4, but it is "established District of Columbia precedent that service of process is invalid when the plaintiff sends a summons and complaint by certified mail to a defendant's offices but the mail is signed for by a secretary, receptionist, or other individual not specifically authorized to accept service of process." *Byrd v. D.C.*, 230 F.R.D. 56, 59 (D.D.C. 2005). *See also Terry v. Dewine*, 75 F. Supp. 3d 512, 528 (D.D.C. 2014) (service by mail on Ohio Attorney General invalid without "proof that the individual that received the service of process was authorized to accept service on behalf of defendant[ ] in their individual capacit[y]"). Here, Plaintiffs have not identified who received the mailing.

New York's service by mail provision provides that a summons and complaint may be served by first class mail, along with "two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender." N.Y. C.P.L.R. § 312-a(a). Service is complete only when "the signed acknowledgement of receipt is mailed or delivered to the sender." *Id.* § 312-a(b). Plaintiffs have not provided the acknowledgment of receipt forms required by CPLR § 312-a. This deficiency renders Plaintiffs' attempted mail service on Governor Cuomo defective. *See Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*, No. 19-CV-1045 (PKC), 2020 WL 1536596, at *6 (E.D.N.Y. Mar. 31, 2020) (collecting cases).

Despite Plaintiffs' failure to properly serve Governor Cuomo, this Court may nevertheless proceed to dismiss the claims against him with prejudice, given the lack of merit of their claims. *See Dominguez*, 536 F. Supp. 2d at 22 ("If dismissing the claim without prejudice due to insufficient service would lead to the refiling of a meritless claim . . . our Circuit has held that it is proper to consider other means of dismissing the case.") (citing *Simpkins v. Dist. of Columbia Gov't,* 108 F.3d 366, 369–70 (D.C. Cir. 1997)).[1] Plaintiffs' claims are meritless for a number of different reasons.

## II. THE COURT LACKS PERSONAL JURISDICTION OVER GOVERNOR CUOMO

As this Court is aware, in a federal court action, the plaintiff "bears the burden of establishing personal jurisdictional over each defendant." *Trump v. Comm. on Ways & Means, United States House of Representatives*, 415 F. Supp. 3d 98, 106 (D.D.C. 2019) (citing *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). While "'factual discrepancies appearing in the record must be resolved in favor of the plaintiff,'" *id*. (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)), "a court need not accept the plaintiff's 'conclusory statements' or 'bare allegations' regarding the defendant's actions in a selected forum." *Id*. (quoting *Shaheen v. Smith*, 994 F. Supp. 2d 77, 81 (D.D.C. 2013)).

A federal court has jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Therefore, "if a District of Columbia court could exercise jurisdiction" over the defendant, "then so can this Court." *Trump v. Comm. on Ways & Means,* 415 F. Supp. 3d at 105.

---

[1] In addition, Plaintiffs' failure to properly serve Governor Cuomo comes after the Court already provided them with multiple extensions of time to serve the defendants and warned that the most recent extension was the final one available. *See* Minute Orders dated April 28, 2020; June 5, 2020; June 16, 2020; and June 24, 2020.

5

There are two types of personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### A. The Court Does Not Have General Jurisdiction Over Governor Cuomo.

Under D.C. law, "there is general jurisdiction over a defendant who is 'domiciled in, organized under the laws of, or maintaining his or its principal place of business in' the District." *Lemon v. Kramer*, 270 F. Supp. 3d 125, 136 (D.D.C. 2017) (citing D.C. Code § 13–422). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Plaintiffs concede that Governor Cuomo is domiciled in New York, not the District of Columbia. Compl. ¶ 22. This Court therefore does not have general jurisdiction over him. *See Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d at 106 (no general jurisdiction over non-resident New York State officials); *Turner v. Abbott*, 53 F. Supp. 3d 61, 67 (D.D.C. 2014) (no general jurisdiction over Texas Attorney General who did not live or work in the District).

### B. The Court Does Not Have Specific Jurisdiction Over Governor Cuomo.

Where a defendant is a non-resident, a court may exercise specific jurisdiction if the lawsuit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). The specific jurisdiction analysis involves "a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

D.C.'s long-arm statute provides that courts may exercise personal jurisdiction over a person where the plaintiff's claim for relief arises from the defendant's "transacting any business in the District of Columbia," among other specific categories. *Lemon*, 270 F. Supp. 3d at 136 (quoting D.C. Code § 13-423(a)(1)).[2] Further, "[e]ven if a plaintiff satisfies the D.C. long-arm statute, jurisdiction over a defendant must still fall 'within the permissible bounds of the Due Process Clause.'" *Trump v. Comm. on Ways & Means, United States House of Representatives*, 415 F. Supp. 3d at 106 (quoting *GTE New Media*, 199 F.3d at 1347). To satisfy the due process requirement, a plaintiff must show "minimum contacts," *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), between the defendant and the forum, "such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Such minimum contacts must show that "the defendant purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Here, Plaintiffs have not alleged that their claims against Governor Cuomo arise out of or relates to any contact he has had with the District of Columbia. Their primary claim against him

---

[2] D.C.'s long-arm statute provides, in relevant part:
   (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
   (1) transacting any business in the District of Columbia;
   (2) contracting to supply services in the District of Columbia;
   (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
   (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .
   (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.
D.C. Code § 13-423.

7

is that he "signed an executive order which precludes any American citizen from doing business with any New York State agency unless he has first signed an oath of loyalty to Israel." *Id.* ¶ 22. This appears to be a reference to New York Executive Order No. 157, which directs certain New York State agencies to divest public funds from entities that participate in the Boycotts, Divestment and Sanctions campaign against Israel. *See* N.Y. Exec. Order No. 157 (June 5, 2016), *available at* https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_157_new.pdf.[3] There is no connection whatsoever between Executive Order No. 157—a New York Executive Order, signed in Albany, New York, that applies only to New York State agencies—and the District of Columbia, and Plaintiffs do not allege one. Nor is there any connection alleged between the District and Plaintiffs' allegations that Governor Cuomo encouraged other governors to enact similar orders and did not register as an agent of Israel. Specific jurisdiction is therefore unavailable. *See Trump v. Comm. on Ways & Means, United States House of Representatives*, 415 F. Supp. 3d at 106 (no specific jurisdiction in D.D.C. over non-resident New York State officials in claim arising from New York tax legislation); *Terry v. Dewine*, 75 F. Supp. 3d 512, 522–23 (D.D.C. 2014) ("Nothing about the underlying events, relating to a foreclosure proceeding in Ohio, would lead these three county officials to expect that participating in the foreclosure process would open them to suit in a D.C. federal court."); *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 132-33 (D.D.C. 2013) (D.C. court lacked personal jurisdiction over Florida officials sued for participation in Florida court proceedings); *Fuentes-Fernandez & Co. v.*

---

[3] The Court may consider the text of the Executive Order when deciding the motion to dismiss because the document is incorporated into the Complaint by reference. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

8

*Caballero & Castellanos*, 770 F. Supp. 2d 277, 281 (D.D.C. 2011) (D.C. court lacked personal jurisdiction over Louisiana agency sued for work performed in Louisiana).

The only contact between Governor Cuomo and the District that Plaintiffs allege is that he "attended one or more" functions in the District hosted by AIPAC at some unspecified point during "the past 20 years." Compl. ¶ 13. But this contact cannot support specific jurisdiction because Plaintiffs' claims do not arise out of or relate to Governor Cuomo's alleged attendance at such functions. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (holding a court may exercise specific jurisdiction over a defendant only "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities"); *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981) ("The District of Columbia courts have interpreted section 13-423(b) as a bar to claims unrelated to the acts forming the basis for personal jurisdiction."). Moreover, such *de minimis* alleged contacts fall far short of the standard required to satisfy due process. *See, e.g.*, *Turner*, 53 F. Supp. 3d at 68 (defendant's participation in a single lawsuit in the forum "is far from the amount and frequency of contacts that the Supreme Court had in mind in developing the minimum contacts test").

As Plaintiffs are unable to satisfy the necessary requirements to demonstrate either general jurisdiction or specific jurisdiction, this Court lacks personal jurisdiction over Governor Cuomo.

### III.  PLAINTIFFS DO NOT HAVE STANDING TO PURSUE A CLAIM AGAINST GOVERNOR CUOMO

Plaintiffs also fail to establish standing. To establish standing, a plaintiff "must demonstrate that it has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"

9

*UMC Dev., LLC v. D.C.*, 401 F. Supp. 3d 140, 150 (D.D.C. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016)). "At the pleading stage, 'the plaintiff must clearly allege facts demonstrating each element.'" *Id*. (quoting *Spokeo*, 136 S. Ct. at 1547). "Moreover, because 'standing is not dispensed in gross,' 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id*. (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)).

The Complaint names 13 plaintiffs, but it does not clearly allege what injury each plaintiff has allegedly suffered. Instead, the Complaint alleges that Plaintiffs' "injuries include but are not limited to: (a) siblings and parents maimed and murdered (*see* the Dawabsheh family, *see* Barghouthi family); (b) outright theft of private property (Plaintiffs Khateeb and Ali Ali); (c) arrest, torture, and incarceration (*see* both Ahed and Bassem Al- Tamimi)." Compl. ¶ 14.

None of these alleged injuries are "fairly traceable to the challenged conduct of" Governor Cuomo. Plaintiffs do not allege that Governor Cuomo inflicted these injuries on them or that he had any role in their commission. Instead, they allege that he signed an Executive Order, convinced other governors to sign similar orders, and did not register as a foreign agent. There is no connection between these actions and Plaintiffs' alleged injuries, and no allegation that any Plaintiff has lost business with the State of New York as a result of the Executive Order or otherwise been harmed by that Order. Plaintiffs therefore do not have standing to pursue their claim against Governor Cuomo.

### IV.   ANY CLAIMS ASSERTED AGAINST GOVERNOR CUOMO IN HIS OFFICIAL CAPACITY ARE BARRED BY SOVEREIGN IMMUNITY

Plaintiffs' Complaint does not specify whether Governor Cuomo is being sued in his individual capacity or in his official capacity. *See Dickerson v. D.C.*, 70 F. Supp. 3d 311, 318–19 (D.D.C. 2014) ("If a complaint does not specify whether an official is being sued in his

10

individual or official capacity, [t]he course of proceedings . . . typically will indicate the nature of the liability sought to be imposed.") (internal quotation omitted).

To the extent Plaintiffs assert any claims against Governor Cuomo in his official capacity, those claims are barred by sovereign immunity under the Eleventh Amendment. A "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and is therefore "no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The State of New York is not susceptible to suit in federal court without a valid abrogation or waiver of its Eleventh Amendment immunity, *see* U.S. Const. amend. XI; *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001), and there has been neither Congressional abrogation of the State's sovereign immunity under the TSA or TVPA, nor waiver by the State of New York of its Eleventh Amendment immunity for claims brought in federal court. Moreover, Plaintiffs seek money damages in this action, which they cannot recover from the State of New York via Governor Cuomo in his official capacity. *See Terry v. Dewine*, 75 F. Supp. 3d 512, 526 (D.D.C. 2014) ("Insofar as Plaintiff seeks to recover money damages from the State of Ohio by suing [an Ohio state official] in his official capacity, this Court has no subject matter jurisdiction over the claims in this action because of state sovereign immunity.").

### V. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST GOVERNOR CUOMO

Plaintiffs' Complaint fails to state *any* viable claim against Governor Cuomo. As this Court is aware, to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not met, however, by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*.

Beyond the threshold issues set forth above, the Complaint also fails to state a claim against Governor Cuomo as a matter of law. The Complaint alleges in conclusory fashion that the defendants have "aided and abetted the commission of numerous war crimes and crimes against humanity" in violation of the ATS and TVPA. Compl. pp. 4-5. It contains no well-pled allegations that Governor Cuomo engaged in such conduct.

### A. The Complaint Fails to State a Claim Against Governor Cuomo for Aiding and Abetting a Violation of the ATS.

To state a claim for aiding and abetting liability under the ATS, "the complaint must contain (1) a well-pled allegation of a primary violation of the law of nations, i.e., that [the primary conduct] represent[s] a violation of an international norm with at least as definite content and acceptance among civilized nations [as] the historical paradigms familiar in 1789, and (2) a well-pled secondary violation of the law of nations, by pleading the requirements for aiding and abetting liability under customary international law." *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 103 (D.D.C. 2017) (internal quotations omitted), *order vacated in part,* 285 F. Supp. 3d 240 (D.D.C. 2018). To satisfy the requirements for pleading aiding and abetting liability under customary international law, the complaint must allege both: (1) *actus reus*, which is "established by 'practical assistance, encouragement, or moral support which has a substantial effect on the perpetration of the crime,'" *Doe v. Exxon Mobil Corp.*, No. CV 01-1357(RCL), 2015 WL 5042118, at *9 (D.D.C. July 6, 2015) (quoting *Prosecutor v. Šainović,* Case No. IT–05–87–A, Appeal Judgement, ¶ 1649 (ICTY Jan. 23, 2014)); and (2) the defendant's *mens rea*,

12

which must show that the defendants "know that their acts assist the commission of the principal offense." *Id*. at *10.

The Complaint here makes no attempt to satisfy any of these pleading requirements as to Governor Cuomo. The specific conduct it alleges he engaged in—signing an Executive Order regarding how New York State agencies invest their funds, allegedly encouraging other states to enact such orders, and not registering as a foreign agent—does not amount to practical assistance, encouragement, or moral support of any alleged violation of the law of nations. Plaintiffs do not allege any connection between the Executive Order and any alleged crimes in the Middle East. And the Complaint makes no attempt to establish Governor Cuomo's *mens rea*. The ATS claim against Governor Cuomo therefore fails.

> **B. The Complaint Fails to State a Claim Against Governor Cuomo for Aiding and Abetting a Violation of the TVPA.**

The TVPA "provide[s] civil liability for torture or extrajudicial killing carried out by an individual 'under actual or apparent authority, or color of law, of any foreign nation.'" *Gonzalez-Vera v. Kissinger*, No. 02-cv-02240 (HHK), 2004 WL 5584378, at *7 (D.D.C. Sept. 17, 2004), *aff'd,* 449 F.3d 1260 (D.C. Cir. 2006) (quoting TVPA § 2(a)). "The plain language of the TVPA limits liability to those acting under color of law of a foreign nation." *Id*. at *8. To plead aiding and abetting liability under the TVPA, a complaint must allege that the defendant was "a higher official [of a foreign state] who authorized and directed acts of torture or extrajudicial killing [or] an individual who acted in concert with a foreign state to commit such acts." *Id*. ("The legislative history of the TVPA indicates that Congress was concerned with holding liable higher officials of a foreign state who authorized or directed torture, but did not personally carry out such acts.").

The Complaint does not contain any well-pled allegations that Governor Cuomo acted in concert with any foreign state to commit torture or extrajudicial killing. The TVPA claim against Governor Cuomo therefore fails.

## CONCLUSION

For the foregoing reasons, Governor Cuomo respectfully requests that the Court dismiss the claims against him for insufficient service of process, lack of personal jurisdiction, lack of standing, sovereign immunity, and failure to state a claim.

Dated: New York, New York
July 31, 2020

                      Respectfully submitted,

                      LETITIA JAMES
                      Attorney General
                      State of New York
                      *Attorney for Governor Cuomo*

                      By: /s/ Owen T. Conroy
                      Owen T. Conroy (D.C. Bar No. 991097)
                      Assistant Attorney General
                      28 Liberty Street
                      New York, New York 10005
                      Tel.: (212) 416-6382
                      Email: Owen.Conroy@ag.ny.gov