## APPENDIX C

## ADDITIONAL GROUNDS FOR DISMISSAL

**I.    Claims Against Walid Shoebat Are Based on Speech Protected by the First Amendment and Should Be Dismissed**

Plaintiffs' claims against Walid Shoebat are predicated entirely on constitutionally-protected speech. Specifically, Plaintiffs make the following allegations against Shoebat:

- That he "advocates the national registration of Muslims." Compl. at 12.

- That in speaking, he aims to "(a) convince Americans that Palestinians are 'savages' and 'terrorists; and (b) convince first responders to support the national registration of all Muslims." *Id*. at 13.

- That he has "warned first responders about the need to profile Palestinians because they are dedicated to inflicting acts of terrorism on the American population." *Id*.

- That he is a "'profiteer'" [who] makes money by convincing Americans and Congressional members that Palestinians are responsible for terrorism and are not deserving of their own state." *Id*.

- That "he spreads vile propaganda about Palestinian terrorists." *Id*. at 36, ¶ 49;

- That he "benefits from grants awarded by the Department of Homeland Security in its never-ending war on terror." *Id*.

- That he "educate[s] first responders about the dangers posed by Palestinian terrorists." *Id*.

- That he has "labeled Palestinians as terrorists." *Id.* at 39, ¶ 56.

- That he, along with Defendants Huckabee and Gingrich, has "worked to frustrate the two-state solution, and believe that all non-Jews should be forcibly removed from the OPT." *Id*.

- That he, along with Defendants Huckabee and Gingrich, claim that "Palestinians are not human beings, but 'beasts' and have played a significant role in the denationalization of the Palestinian civilian population." *Id*.

- That "he is in favor of racial profiling for Muslims, and the way he makes money is to scare U.S. citizens located in the heartland, i.e. the Muslims are coming to take over your town and install Sharia law." *Id*. p. 129, ¶ 291.

- That he has "abused the discretion afforded to Homeland Security to give out grants to individuals who are fighting the war against terrorism." *Id*. p. 131, ¶ 298.

In short, the sum total of the Plaintiffs' charges against Shoebat is that he makes speeches in which he says things the Plaintiffs don't like, and gets paid for it. Notably, none of the allegations concern speech directed at any particular Plaintiff. Rather, Shoebat is charged with expressing his opinions about Palestinians (and Muslims) generally as a group.

Indeed, Plaintiffs concede that the claims against Shoebat are "in a separate category" from the other Defendants. *See* Compl. at 40, ¶ 58 ("Shoebat is in a separate category because he functions as a profiteer and lectures first responders about the need to profile members of the Muslim community and monitor their activities"); *id.* at 129, ¶ 291 ("Defendant Shoebat is in a separate category, of course. He is a terrorism profiteer who has misrepresented his status as an expert on Palestinian terrorism and has made thousands of dollars convincing first responders in North and South Dakota and Iowa that they need to be on the alert for Muslim terrorists"); *id.* at 131, ¶ 298 ("Shoebat is in a separate category because he functions as a profiteer and lectures first responders about the need to profile members of the Muslim community and monitor their activities"). The reason Shoebat is in a "separate category," is that while the claims against the other Moving Defendants – as untenable and frivolous as they are – are based on allegations of

financial donations to charities that support settlements, no such claims are made against Shoebat.  He is not alleged to have donated money to anyone.  All he is alleged to have done is speak his mind and "profit" from doing so. In fact, the only remotely specific allegation as to Shoebat is that he speaks to first responders in Iowa and the Dakotas about the "need to profile Palestinians" and "be on alert for Muslim terrorists."

That Shoebat is engaging in constitutionally protected speech is beyond any reasonable debate. As the Supreme Court reiterated in *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017), "[w]e have said time and again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers'" (*citing Street v. New York*, 394 U.S. 576, 592 (1969)).  *See also, Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable").

Here, of course, we are not dealing with an effort by the government to suppress protected speech, but by a private plaintiff to use protected speech as a predicate for a legal claim. In actions involving private non-governmental persons, issues of constitutionally protected speech arise almost exclusively in the context of defamation claims. An entire body of jurisprudence is devoted to the First Amendment issues in defamation cases. But Plaintiffs do not assert a defamation claim against Shoebat (nor could they, given, among many other things, that the statements attributed to Shoebat are not alleged to have been directed to any of the Plaintiffs specifically). Rather, they attempt to shoehorn Shoebat's speech that is protected by the First Amendment into claims for "aiding and abetting" the "denationalization and dehumanization of the Palestinian people." Taken to its logical conclusion, the Plaintiffs' theory, such as it is, would

mean that every pundit on every TV channel and in every newspaper would be subject to claims by those who find his or her opinions offensive or "dehumanizing."

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 556. There is no remotely cognizable legal theory that would render the statements attributed to Shoebat actionable in this action, or, indeed, any other. Other than in cases of defamation involving factually false statements directed at specific individuals, speech protected by the First Amendment cannot serve as a predicate for a legal claim, much less one as attenuated and implausible as "aiding and abetting dehumanization." Neither is "profiteering" a basis for a legal claim. The claims against Shoebat must be seen for what they are: an egregious example of "lawfare," the use of litigation to silence those who express views inimical to one's goals. It should be dismissed.

**II.     This Court Should Dismiss the Complaint in its Entirety as Against Defendants AIPAC, Howard Kohr, and Brian Shankman Because Constitutionally Protected Speech Does Not Support a Cognizable Theory of Recovery Against Them**

The allegations in the Complaint against Defendant AIPAC are predicated, in large part, on activities purportedly undertaken by the organization as a 501(c)(4) lobbying organization. *See, e.g.,* Compl. ¶ 18 (describing AIPAC as "one of the top lobbying firms in Washington, D.C" and claiming that it "writes all the legislation and the Congressional anti-Palestinian resolutions pertaining to the Middle East…."). With respect to Defendants Howard Kohr and Brian Shankman, the Complaint is bereft of any allegations—conclusory or otherwise—specifically identifying any legally cognizable actions undertaken by these defendants. Rather, the Complaint classifies them as "AIPAC employees" and appears to group them under the AIPAC umbrella.

*Id*. ¶ 4(b).  Yet the purported lobbying actions undertaken by AIPAC or its employees do not constitute a cognizable theory upon which Plaintiffs can support their claims.

Indeed, it is well-settled that lobbying—"the right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws"—is "core" political speech, prototypical of the kind of speech protected by the First Amendment.  *Eastern R.R. Presidents Conference, v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961). The right to lobby government "is not just an abstract or generalized notion," but rather, it is embedded within the core rights afforded by the First Amendment.  *Nat'l Ass'n of Soc. Workers v. Harwood*, 860 F. Supp. 943, 950 (D.R.I. 1994), *opinion modified on reconsideration*, 874 F. Supp. 530 (D.R.I. 1995), *rev'd,* 69 F.3d 622 (1st Cir. 1995).  "The First Amendment protects [a lobbying organization's] right not only to advocate [its] cause but also to select what they believe to be the most effective means for doing so."  *Meyer v. Grant*, 486 U.S. 414, 424 (1988).

Here, Plaintiffs are using protecting speech as a predicate for their legal claims—specifically, as a means of asserting a claim for aiding and abetting liability against AIPAC (if this Court even recognizes such a claim under the law)—simply because they disagree with or find offensive the ideas expressed as part of the lobbying efforts asserted in the Complaint. Namely, Plaintiffs devote a large portion of their Complaint expressing disdain for the purported efforts undertaken by AIPAC and its supporters to pass anti-BDS legislation, which Plaintiffs describe as an effort to stop criticism of Israel's so-called "subjugation of the Palestinian people."  *See* Compl. ¶ 171; *see also id.* ¶ 22 (alleging that defendant Cuomo, with the support of Rabbi Hikind "signed up to be AIPAC's partner and the Israeli spokesperson on the BDS issue…."); *id.* ¶ 99 (alleging AIPAC's involve in anti-BDS legislation and "extensive lobbying

work done by AIPAC officials"); *id.* ¶ 167 (describing defendant Cuomo's alleged involvement in supporting anti-BDS legislation "prepared by AIPAC officials").

Simply because Plaintiffs find AIPAC's alleged constitutionally protected lobbying efforts to be offensive or "dehumanizing" does not make such efforts actionable under the law or "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 557. Outside the context of defamation involving factually false statements directed at specific individuals, there is no body of case law that would serve to support a legal claim predicated on constitutionally-protected speech, much less in the context of an "aiding and abetting" claim. As such, this Court should dismiss the Complaint in its entirety against AIPAC, Howard Kohr, and Brian Shankman.