UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE DAWABSHEH FAMILY, ET AL.** | )<br>)<br>) |
| **Plaintiffs,** | )<br>)<br>) |
| v. | )<br>)  Case No. 1:20-cv-00555<br>) |
| **NETANYAHU, ET AL.** | )<br>)<br>) |
| **Defendants.** | )<br>)<br>) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CUOMO'S MOTION TO DISMISS**

Come now, Plaintiffs herein and hereby oppose the Motion To Dismiss filed by Defendant Cuomo. It should be denied for good cause as detailed herein. Based upon *In Re South Africa Apartheid Litigation*,[1] Plaintiffs have a viable claim for dehumanizing a population, which is what is alleged against Gov. Cuomo.

Gov. Cuomo, the popular three term governor of the nation's fourth most populous state has been a staunch supporter of the State of Israel, which is understandable given the fact that a large part of his constituency in New York City and the suburbs is heavily Jewish. However, inflicting a particularized injury on the Palestinians is not understandable.

Seven years ago, when the anti-Boycott, Divestiture, and Sanction [hereinafter BDS] movement was announced by the Palestinians, Israeli Prime Minister Benjamin Netanyahu (hereinafter PMN) immediately knew how dangerous this movement could be. The reason—he was part of the strong Israel-South African alliance. He saw first-hand what happened when the South Africa embargo

---
[1] *Ntsebeza v. Daimler A.G. (In re S. African Apartheid Litig.)*, 624 F. Supp. 2d 336 (S.D.N.Y. 2009)

started to have an impact on the South African Apartheid regime. He immediately decided to fund an anti-BDS operation on US soil. He committed $25 million a year to that effort, using AIPAC as a money launderer. The goal—kill the BDS movement. This was clearly a particularized injury to the Palestinian people-- aiding and abetting the demise of the Palestinian state.

Netanyahu alerted a number of U.S. based pro-Israel 501 (c)(3) charities and alerted the Israeli Ambassador and Defendant Rabbi Dov Hikind, then a N.Y. State Assemblyman and Defendant Cuomo's colleague. As shown herein, Defendant Rabbi Dov Hikind and his wife operate a 501(c)(3) charity[2] that has been funding ethnic cleansing and genocide for approximately 20 years. They signed on to use their political clout with the N.Y. governor to advance the anti-BDS cause.

Gov. Cuomo signed on to the effort as well, putting all of his power, authority, and national prestige as N.Y. governor into the effort. Defendant Cuomo's lock step support of the anti-Palestinian movement promoted by Israeli Prime Minister Benjamin Netanyahu was illustrated by Cuomo's signing of an executive order requiring any business or person interested in doing business with the State of new York to swear he does not support the growing BDS--boycott Israel movement. On June 5, 2016 Cuomo signed an Executive Order Number 157 which precludes any American citizen from doing business with any New York State agency unless he has first signed what amounts to an oath of loyalty to Israel. This restriction violates the rights that are recited in the Bill of Rights including the First Amendment right to associate. As a result of his conduct, and that of Defendant Hikind, they placed illegal restrictions on both interstate and foreign commerce at the request of the Israeli Ambassador, Rabbi Hikind, U.S. Ambassador Friedman, AIPAC officials, and PMN.

Since then, Defendant Cuomo has secured the approval of at least twenty-five other governors and is working today as a representative of Israel—a foreign nation-- even though he is not registered under the Alien Registration Act. He signed up to be AIPAC's partner and the Israeli spokesperson on

---

[2] American Friends of Ateret Cohanim

the BDS issue on a nationwide basis in order to secure political campaign contributions in case he sought future political office--an almost certainty.

In his Motion to Dismiss, Defendant Cuomo argues five issues: 1) Improper service; 2) That this Court lacks jurisdiction over Defendant Cuomo; 3) That Plaintiffs lack standing because they do not allege any injury that is fairly traceable to Cuomo's conduct; 4) That Cuomo's action were in his official capacity as governor and are therefore barred by sovereign immunity; and, 5) That the Complaint fails to state a claim against Defendant Cuomo.

The five issues Defendant Cuomo proffers to the court cannot serve as a basis for dismissal of the Complaint.

**1. Gov. Cuomo was properly served with the Complaint and Summons.**

Defendant Cuomo argues that service was improperly accomplished on Gov. Cuomo. He is wrong.

The F.R.C.P. **4 (e)(1)** states: SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES. " Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

(1)   following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made…"

The applicable state law, NY State CVP Rule 307(2): Personal service upon the state referenced in the FRCP 4 (e)(1) states:

> "Personal service on a state officer sued solely in an official capacity or state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or **(2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency…**"(emphasis added)

Plaintiffs properly served Gov. Cuomo on June 12, 2020 by delivering, via certified mail, a copy of the summons and complaint to the New York State Executive Mansion.[3]

Defendants based their improper service argument on *Byrd v. D.C.*, 230 F.R.D. 56, 59 (D.D.C. 2005). *See also Terry v. Dewine*, 75 F. Supp. 3d 512, 528 (D.D.C. 2014). *Byrd* was a case filed against the District of Columbia—not an officer of the District. *Terry*, on the other hand was a case filed against Ohio Governor Mike Dewine in his *individual* capacity. That distinction understandably triggers a requirement that service be delivered to a person designated for such service.

In the instant case, Gov. Cuomo is being sued in his *official* capacity. Hence, service was proper.

### 2. The D.C. Federal Court has jurisdiction over Gov. Cuomo

Defendant Cuomo was, and still is, a frequent visitor to the District of Columbia, doing his "business" as governor, whether meeting with the Israeli Ambassador or Ambassador Friedman, other governors at the meetings of the National Governor's Association, or visiting the President to discuss matters important to NY State.

The first step in examining whether a court has specific personal jurisdiction is to look to the state's long-arm statute. *Crane*, 894 F.2d at 455[4]. The District of Columbia's long-arm statute[5] authorizes the exercise of specific personal jurisdiction based on a defendant's conduct in, or directed toward, the District of Columbia and provides, in pertinent part, as follows:

> **(a)** A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —
>
> > **(a)** transacting any business in the District of Columbia;
> > **(b)** contracting to supply services in the District of Columbia;
> > **(c)** causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> > **(d)** causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or

---

[3] Defendant Cuomo acknowledged this in his motion to dismiss, page 3.
[4] *Crane v. N.Y. Zoological Soc'y,* 282 U.S. App. D.C. 295, 894 F.2d 454 (1990)
[5] 13 D.C. Code 423

>solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

**(b)** When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him. *See* D.C. Code § 13-423.

The second element of the inquiry is whether the defendant purposefully established minimum contacts with the District of Columbia such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activity with the forum state, thus invoking the benefits and protection of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988).

Relating these inquiries to Defendant Cuomo reveals that he has established minimum contacts with the District of Columbia, to wit:

a. The State of New York maintains an office in the District of Columbia at 444 North Capitol Street SW #301, Washington, DC 20001;

b. Defendant Cuomo frequently "avails [himself] of the privileges of conducting activity benefits"[6] of the District of Columbia;

  i. According to his official schedule, during the past two years Gov. Cuomo he has visited D.C. at least 9 times:[7]

  1. He visited D.C. on Nov. 28, 2018 visiting the While House;

  2. He also visited on January 8, 2019, Feb, 12, 2019, and on Feb 22, 2019 addressing the governor's coalition for tax fairness.

---

[6] Id.
[7] https://www.governor.ny.gov/schedule

3. He returned to D.C. on February 8, and 9, 2020 to attend the National Governor's Association meeting at the D.C. Convention center.

4. He was back in D.C. on Feb 13, 2020 and April 21, 2020, to visit President Trump;

5. He returned on May 27, 2020 where he held a press conference at National Press Club.[8]

Under D.C. Code § 13-423(a)(4), the plaintiff must show that the defendant's tortious conduct outside of the District of Columbia caused injury in the District of Columbia *and* must demonstrate one of three "plus factors": (1) the defendant regularly does or solicits business in the District of Columbia; (2) the defendant derives substantial revenue from the District of Columbia; or (3) t**he defendant engages in a persistent course of conduct within the District of Columbia**. D.C. Code §13-423(a)(4). *Kline v. Williams*, No. Civ. A. 0501102(HHK), 2006 U.S. Dist. LEXIS 23263, at * 11-12 (D.D.C. Mar. 23, 2006). (emphasis added)

In *Crane*, the D.C. Circuit considered the application of the long-arm statute to a case involving the New York Zoological Society (NYZS) and an alleged defamation of a man named Crane. While the NYZS is outside of the District, the Court held that Plaintiff Crane was "entitled to a fair opportunity to inquire into [defendant] NYZS's affiliations with the District." Moreover, the Circuit held that with respect to the "plus factor" required under D.C. Code § 13-423(a)(4), "[Plaintiff] should be allowed to seek a more detailed delineation of NYZS's activities in the District," *Crane v. Carr*, 814 F. 2d 758, 764, (D.C. Cir. 1987)

Like *Crane*, Plaintiffs in the instant case should get "a fair opportunity to inquire into" Defendant Cuomo's actions in the District through discovery. Moreover, Defendant Cuomo's actions in promoting

---

[8] https://www.governor.ny.gov/schedule

and enabling anti-BDS legislation and other directives—his tortious conduct outside of the District of Columbia[9]-- had a chilling effect on the speech and activities of at least one of the Plaintiffs in the instant case: Plaintiff John Healey, a long-time resident of the District of Columbia. This is just one illustration that will be provided to the court.

Due to the anti-BDS movement's aggressive ban on speaking out against settlement criminal activity, Healy was reluctant to express his pro BDS views. (see Declaration of John Healey, attached at Exhibit A.) a gross intrusion on Plaintiff Healy's constitutional rights to freedom of speech and freedom of assembly.

### 3. Plaintiff have standing to sue Gov. Cuomo

Defendants argue that Plaintiffs lack standing to sue Gov. Cuomo. They are wrong

To qualify as a party with standing to litigate, each Plaintiff bears the burden of showing (1) "injury in the form of 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent;'" (2) that the injury is "fairly traceable to the challenged action . . . and not th[e] result [of] the independent action of some third party not before the court;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Arizona State Legislature*, 135 S. Ct. at 2663 (internal quotation marks omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

A Plaintiff bears the burden of establishing an "injury in fact" that is both "concrete *and* particularized" and that involves an invasion of a legally protected interest. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (citation omitted). The injury must also be "concrete," *i.e.*, "'real,' and not 'abstract." *Id.* at 1548.

---

[9] D.C. Code § 13-423(a)(4)

Plaintiffs have no difficulty meeting all three requirements. There is no question about real injury. Defendant Cuomo's anti-BDS crusade has had a chilling effect on millions of Americans—and Palestinians. Over the course of the last few decades 400,000 to 500,000 Palestinians have been driven out of the Occupied Territories by belligerent settlers. What's more, an untold number of them have been murdered (settlers call them revenge attacks) and tortured. They have been subjected to systematic genocide and ethnic cleansing. Few things are more "personal and individual" (*Id.* at 1528) than being murdered, tortured, and driven out of your home and having your livelihood destroyed. That conduct violates a legally protected interests that all American citizens have, courtesy of the Law of Nation Clause in the U.S. Constitution. These injuries are "particularized," and "affect the plaintiffs in a personal and individual way." *Id.* at 1548 (citation omitted). They are also "concrete," *i.e.*, "real,' and not 'abstract." *Id.* at 1548.

The second requirement can also be satisfied. The actions of Gov. Cuomo, and the many other public officials he has encouraged and enabled to adopt anti-BDS policies, have had a chilling effect on freedom of expression and assembly guaranteed by the First Amendment. He did that in exchange for political support to remain in office. And his actions did not only affect New Yorkers, but also residents of New Jersey and Connecticut who oppose Israel's apartheid policies in the OPT. As a result of Gov. Cuomo's executive order and his actions to promote the anti-BDS movement, New Yorkers, and residents of approximately other 18 states cannot express their true feelings about the actions of belligerent settlers —a violation of their first amendment rights to freedom of expression.

In the Complaint, Plaintiff carefully and exhaustingly show the tortious injuries suffered as a result of Gov. Cuomo's anti-BDS campaign.

As detailed in the Complaint:

- Defendant Cuomo convinced numerous other governors and other government executives to enact an unconstitutional executive order criminalizing the anti-BDS movement. Cuomo and his

allies in the anti-BDS campaign have deprived 195 million Americans in thirty-six different states of the right to support the Palestinian cause and criticize Israeli Prime Minister Netanyahu's campaign to denationalize the Palestinian population.

- The New York State anti-BDS legislation violated fundamental liberties cherished by Americans, e.g. their right to criticize a foreign country's human rights record. Anti-BDS edicts require U.S. citizens to sign what amount to loyalty oaths to Israel. It has had a serious chilling effect on freedom of speech and interstate commerce.

- After they criminalized the act of criticizing settler violence, and funding by New York-based charities on a state level (Governor Cuomo, New York State), they have now done so on a federal level, even though the BDS boycotting activities are perfectly legal. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). As a result, if an American citizen supports, demonstrates for, or contributes financially to the BDS movement and has not signed a loyalty oath to Israel, he may face five years in jail and a hefty fine thanks to the activities of Governor Cuomo and Senate Majority leader Senator Mitch McConnell.

There is no question that these Plaintiffs have standing to sue Governor Cuomo.

### 4. Sovereign immunity does not protect Gov. Cuomo from this lawsuit

Defendant Cuomo claims he is immune from suit because he is governor of N.Y. As detailed herein, if at all immune, he is only immune from suits that seek monetary damages that would be an expense to the People of New York. That is not what these Plaintiffs seek. Plaintiffs are seeking a specific remedy from Defendant Cuomo: an agreement to submit the text of his anti-BDS executive order to the full NY State legislature for an up, or down, vote.

Defendant Cuomo argues that, because he took his action as governor of New York, he is protected by the doctrine of sovereign immunity under the 11th Amendment. To qualify for sovereign immunity under the 11th Amendment Gov. Cuomo would have to show that his anti-BDS activity was

done for the benefit of the residents of the State of New York. In his oath of office he swore: "I solemnly swear (or affirm) that I will support the Constitution of the United States of the United States, and the Constitution of the State of New York, and that I will faithfully discharge the duties of the office of governor."

It is clear that Defendant Cuomo cannot show that his anti-BDS edict serves the 20 million residents of the Empire State. When given the opportunity to explain to the court why issuing this order would serve the interests of his constituency, Defendant Cuomo ignored the declaration of well-respected journalist Alex Katch, Senior Investigator at Sludge, as published in The Guardian newspaper: "I was raised Jewish, so while everyone should be deeply concerned about anti-Semitism, I know the issue affects me personally…. *That's why I along with many American Jews support BDS and unapologetically condemn the current government of Israel*." (Compl. Page 85)

Defendant Cuomo cannot show how the interests of Katch—and tens of millions of other New York State residents-- have been served by passage of his edict. Based on the facts on the record, a court could conclude that Defendant Cuomo was not acting to advance the interests of his constituency [actually they were against an anti-BDS law; it failed to pass the NY legislature.] It passed the Senate, but when it stalled in the Assembly, Cuomo issued his executive order.

In so doing, he was pursuing PMN's agenda to kill the BDS movement.  Query: who benefitted from the order? Netanyahu and his U.S. supporters, thanks to the ban on pro-Palestinian demonstrations. Cuomo's constituency certainly did not benefit, based upon the conduct complained of herein. Moreover, he has clearly acted outside of his authority by ignoring the will of the people of the State of New York when he signed an executive order at Defendant Rabbi Hikind's insistence that mirrored legislation already rejected by the State Legislature.

Sovereign immunity does not provide authority for the proposition that claims against Gov. Cuomo can be brought. It holds that if plaintiff seeks a monetary award against a sitting governor, that could be a basis for dismissal-- if the Plaintiff expects the remedy to come from the state coffers.

However, if plaintiff alleges it will be paid by the executive personally, sovereign immunity doesn't bar the lawsuit.

"Sovereign immunity doesn't bar all suits against state officers. Some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the State as a party if the suits are, in fact, against the State." See, *e.g., In re Ayers,* 123 U.S. at 505-506; *Idaho* v. *Coeur d' Alene Tribe of Idaho,* 521 U.S. at 270 ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading"). The rule, however, does not bar certain actions against state officers for injunctive or declaratory relief. Compare *Ex parte Young,* 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), and *In re Ayers, supra*, with *Coeur d' Alene Tribe of Idaho, supra, Seminole Tribe, supra,* and *Edelman* v. *Jordan,* 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974).

Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally. *Scheuer* v. *Rhodes,* 416 U.S. 232, 237-238, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); *Ford Motor Co.* v. *Department of Treasury of Ind.,* 323 U.S. 459, 462, 89 L. Ed. 389, 65 S. Ct. 347 (1945). *Alden v. Maine*, 527 U.S. 706, 756-57, 119 S. Ct. 2240, 2267-68 (1999).

Gov. Cuomo in effect, waived his sovereign immunity when he acted to protect and advance the agenda of a foreign country, in direct contravention of the New York Legislature which represents the people of the state of New York--and refused to pass the anti-BDS statute.

### 5. Plaintiffs have stated a claim

It is obvious that Defendant Cuomo does not address the conduct the Plaintiffs have complained of herein, and the significant injury resulting from it as alleged by Plaintiffs. i.e. he aided and abetted the de humanization of all Palestinian civilians living in the greater New York area and left them with

without a remedy to challenge ethnic cleaning, genocide, and the wholesale theft of private property. (See Khateeb Compl. Para. 14)  He also affected their ability to assemble peacefully. In some cases, US citizens living outside the NY area cannot travel to NY to support the BDS movement, even though they will forfeit claims to real property their family owns in the OPT. See Kateeb Compl. Pp.  5[10], 21, 86.

Defendant Cuomo doesn't distinguish or dispute the relevant caselaw .i.e. Plaintiffs draw the Court's attention to *Ntsebeza v. Daimler A.G. (In re S. African Apartheid Litig.*), 624 F. Supp. 2d 336 (S.D.N.Y. 2009) where the court held that a Defendant who is an auto  parts supplier or a Jeep manufacturer can be accused of aiding and abetting war crimes. American attorneys at Nuremburg crafted this at a court investigating war crimes in 1946.

The bottom line is that dehumanizing or disenfranchising a civilian population is a war crime and, as U.S. District Judge Shira A. Scheindlin[11] pointed out, it applies even if you simply encourage dehumanization and disenfranchising. If you do something as seemingly benign as supplying Jeeps or auto parts, or you encouraged the eastern Europe polish liquidation plan, you aided and abetted that effort and you are therefore  a war criminal. Here, Defendant Cuomo did much more than discussed in the *Apartheid* case. He willfully took executive action which destroyed the first amendment rights of his own citizens. When he enacts the anti-BDS Order, it is akin to the first statute that forbade German businesses from doing business with Jews in 1938. The anti-BDS edict resulted in a particularized injury to one particular segment of the population—Palestinians —just like the law against German businesses dealing with Jews.

---

[10] Defendants have financed the theft of real property owned by Palestinian-Americans Ali and Khateeb. Their combined property holdings are worth $3 million (based on Remax values) and they seek a separate monetary judgement in that amount against the Defendants for financing the trespass, pillage, and the conversion of their real property in the OPT. Pillage is a separate war crime in and of itself and is only one war crime that has been implemented by Defendant PMN in Palestine.

[11] Judge Scheindlin wrote the opinion in *Apartheid*.

Laws like the loyalty to Israel pledge embedded in the anti-BDS legislation are almost identical to the Nazi regime's purification statutes (see Rise and Fall of the Third Reich) These statutes started with banning rallies and squelching freedom of expression and wanton destruction of property i.e. Jewish only retail stores. That's exactly what Cuomo did at the urging of Zionist Rabbi Hikind. There hasn't been a single demonstration in favor of BDS in New York. Why? Palestinians and many Americans are afraid; that is the chilling effect of Cuomo's action.

The Defendants herein have each played a significant role in de humanizing the Palestinian people. As alleged in the Complaint, as declared by former President Ronald Reagan, there was always one country which was the beacon on the hill where disenfranchised people could look to vindicate their human rights—the United States of America. That's the reason the Law of Nations Clause is found in the U.S. Constitution; it has been relied upon to justify ATS Claims in over 50 different jurisdictions. Since the governor is an attorney, he can be charged with constructive knowledge of the contents of the U.S. Constitution. That was the basis for his father's decision to support the boycott in South Africa when he, Mario Cuomo, was governor or New York.

Unlike Rabbi Hikind, Cuomo did not directly fund militia units in violation of 18 U.S.C. 960 or President Clinton's executive order,[12] but he created a veneer of illegality: if you support the BDS movement, i.e. you are going against the wishes of the people of New York.

Defendant's memorandum does not address the numerous allegations inherent in the Executive Order: "if you boycott Israel, New York will boycott you" made in the introduction and the two causes of action pled against Defendant Cuomo and Rabbi Hikind. Hikind and his wife have funded settlers

---

[12] Executive Order 12947 was created to block the U.S. holdings of terrorist groups, and their supporters, intent on threatening the Middle East peace process. The Order further prohibited U.S. citizens or inhabitants from having any dealings or transactions with what were termed "Specially Designated Terrorists," or "SDTs." The Annex to the Order lists the 12 organizations which were considered to threaten to disrupt the Middle East peace process: Abu Nidal Organization, Democratic Front for the Liberation of Palestine, Hizballah, Islamic Gamaat, Islamic Resistance Movement, Jihad, Kach, Kahane Chai, Palestinian Islamic Jihad-Shiqaqi faction, Palestine Liberation Front-Abu Abbas faction, Popular Front for the Liberation of Palestine, and the Popular Front for the Liberation of Palestine-General Command.

and settlement militia units. Their goal: an OPT that is free of all non-Jews even though that would be the result of forced physical removal of all non-Jews from the OPT. That is classic ethnic cleansing, which is forbidden by Israel's own anti-Nazi statute.

As alleged, Defendant Cuomo has done a lot more than simply providing political cover for Rabbi Hikind. He enacted the anti-BDS order—against the N. Y. legislature's wishes--as a result of the Rabbi's insistence and his fear of antagonizing powerful Jewish interests. As a politician with aspirations of higher office, Cuomo could not afford to alienate wealthy Jewish donors like Sheldon and Miriam Adelson, and other Jewish voters in the area.

## CONCLUSION

The relief Plaintiffs seek against Defendant Cuomo is simple: he should test the validity of the anti-BDS executive order by asking the full state legislature to either adopt it or reject it, letting his entire N.Y. constituency actually decide whether anti-BDS should be the official policy of the State of New York. Also, he should announce those results with the same vigor with publicity at the Harvard Club, which he did to announce of Executive Order 157.

Respectfully submitted,

*/s/ Martin F. McMahon*
Martin F. McMahon, Esquire
1717 K Street NW – Suite 900
Washington, DC 20006
202-862-4343

**EXHIBIT A**

**EXHIBIT A**

## DECLARATION OF JOHN HEALY

I make the following statement under penalty of perjury,

1. I am a resident of the District of Columbia, residing at 4126 5th Street NW, Washington, DC 20011.

2. I am aware of the anti-BDS movement enabled by N.Y. Gov. Andrew Cuomo.

3. I am a supporter of Palestinian rights.

4. I support the Boycott, Divestiture and Sanction (BDS) efforts of the Palestinian people.

5. The anti-BDS movement has made it uncomfortable for me to exercise my free speech rights by speaking out in support of the Palestinian cause.

6. I have frequently chosen NOT to speak out about the Israel-Palestine issues because I fear reprisal from the anti BDS movement.

7. Because I am truly concerned about the impact Defendants Cuomo's anti-BDS measure will have on free speech and the right to free assembly, I no longer attend pro-Palestinian demonstrations in Washington, for fear of reprisals by the promoters of the Anti-BDS movement.

8. It's not just N.Y., I was sure D.C. Mayor Bowser would enact a similar measure in Washington, DC; she did without any vote by DC citizens.

9. Before if I wanted to picket the Israeli Embassy and join a CAIR [Council on American-Islamic Relations] sponsored anti-Apartheid rally. I wouldn't give a thought to being arrested and or fined but now it's a completely different situation

# John Healy

John Healy

September 1, 2020

Signature: _John Healy_
John Healy (Sep 2, 2020 10:08 EDT)

Email: healyjmu@yahoo.com

## CERTIFICATE OF SERVICE

    I certify that on September 2, 2020, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all parties registered to receive such notice, including defense counsel.

                                        */s/ Martin F. McMahon*
                                        Martin F. McMahon, Esq.