UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERSONAL REPRESENTATIVE OF THE
DAWABSHEH FAMILY, *et al.*,

                *Plaintiffs*,

v.

BENJAMIN NETANYAHU, *et al.*,

                *Defendants*.

Case No. 1:20-cv-00555-DLF

**DEFENDANT ANDREW M. CUOMO'S REPLY MEMORANDUM OF LAW
<u>IN SUPPORT OF HIS MOTION TO DISMISS</u>**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel: (212) 416-6382

*Attorney for Governor Cuomo*

OWEN T. CONROY
Assistant Attorney General
  *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 2

    I.    PLAINTIFFS HAVE NOT PROPERLY SERVED GOVERNOR CUOMO WITH THE COMPLAINT AND SUMMONS ........................................................................................ 2

    II.    THE COURT LACKS PERSONAL JURISDICTION OVER GOVERNOR CUOMO . 3

        A.    D.C.'s Long-Arm Statute Does Not Provide For Specific Jurisdiction Over Governor Cuomo. ........................................................................................................................ 3

        B.    Jurisdiction Over Governor Cuomo Would Not Satisfy Due Process. ........................... 6

    III.    PLAINTIFFS DO NOT HAVE STANDING TO PURSUE A CLAIM AGAINST GOVERNOR CUOMO ..................................................................................................... 7

    IV.    THE CLAIMS AGAINST GOVERNOR CUOMO ARE BARRED BY SOVEREIGN IMMUNITY ...................................................................................................................... 8

    V.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST GOVERNOR CUOMO .. 9

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akhmetshin v. Browder*,
   407 F. Supp. 3d 11 (D.D.C. 2019) ................................................................................................5

*Atlantigas Corp. v. Nisource, Inc.*,
   290 F. Supp. 2d 34 (D.D.C. 2003) ................................................................................................6

*Barclay v. New York State Comm. on Legislative & Exec. Comp.*,
   65 Misc. 3d 685 (Sup. Ct. Albany Cty. 2019) ..............................................................................2

*Bradley v. DeWine*,
   55 F. Supp. 3d 31 (D.D.C. 2014) ..................................................................................................9

*Budik v. Ashley*,
   36 F. Supp. 3d 132 (D.D.C. 2014), *aff'd sub nom. Budik v. United States*, No.
   14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014) ..............................................................1

*Cato Inst. v. United States Sec. & Exch. Comm'n*,
   438 F. Supp. 3d 44 (D.D.C. 2020) ............................................................................................4, 8

*Chrysler Corp. v. Gen. Motors Corp.*,
   589 F. Supp. 1182 (D.D.C. 1984) .................................................................................................6

*Edwards v. United States*,
   No. 18-CV-2560 (KBJ), 2020 WL 2800605 (D.D.C. May 29, 2020) .................................. 1, 8-9

*Foote v. Williams*,
   No. CV 16-2530 (RBW), 2017 WL 3836044 (D.D.C. Aug. 31, 2017) ......................................4

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ....................................................................................................6

*In re S. African Apartheid Litig.*,
   617 F. Supp. 2d 228 (S.D.N.Y. 2009) .................................................................................... 9-10

*In re S. African Apartheid Litig.*,
   624 F. Supp. 2d 336 (S.D.N.Y. 2009) ..........................................................................................9

*Laird v. Tatum*,
   408 U.S. 1 (1972) ..........................................................................................................................8

*Lewy v. S. Poverty Law Ctr., Inc.*,
   723 F. Supp. 2d 116 (D.D.C. 2010) ..............................................................................................5

*Mouzon v. Radiancy, Inc.*,
   85 F. Supp. 3d 361 (D.D.C. 2015) ...................................................................................5

*Penkoski v. Bowser*,
   No. 20-CV-01519 (TNM), 2020 WL 4923620 (D.D.C. Aug. 21, 2020) ..................................7

*Peterson v. Bd. of Governors of Fed. Reserve Sys.*,
   51 F. Supp. 3d 72 (D.D.C. 2014) .....................................................................................7

*Randolph v. Office of New York State Comptroller*,
   168 A.D.3d 1195 (3d Dep't 2019) ...................................................................................2

*United States v. Wilfred Am. Educ. Corp.*,
   No. MISC. 86-333, 1987 WL 10501 (D.D.C. Apr. 23, 1987) ...................................................6

*Ward-Johnson v. Glin*,
   No. 1:19-CV-00534 (CJN), 2020 WL 2770018 (D.D.C. May 28, 2020) ..................................2

**FEDERAL STATUTES**

Alien Tort Statute ...............................................................................................................1

Foreign Agents Registration Act ..........................................................................................1

Torture Victim Protection Act of 1991 .......................................................................... 1, 9-10

**STATE STATUTES AND ORDERS**

D.C. Code
   § 13-423(a)(4) ...........................................................................................................4, 6

New York Civil Practice Law
   § 307(2) ................................................................................................................. 2-3

New York Executive Order No. 157 .......................................................................................8

**PRELIMINARY STATEMENT**

In their Complaint, the Plaintiffs alleged that the Governor of the State of New York, Andrew M. Cuomo ("Governor Cuomo") engaged in three actions that they claim create liability for aiding and abetting under the Alien Tort Statute ("ATS") and the Torture Victim Protection Act of 1991 ("TVPA"): (1) that he signed a New York Executive Order directing certain New York State agencies to stop investing in entities that participate in the Boycott, Divestment, Sanctions campaign against Israel; (2) that he allegedly encouraged other governors to enact similar orders; and (3) that he did not register as an official agent of Israel under the Foreign Agents Registration Act. In his motion to dismiss, (ECF No. 42) ("Cuomo Mot."), Governor Cuomo provided five, independent grounds for dismissal of the claims asserted against him: (1) insufficient service of process, (2) lack of personal jurisdiction, (3) lack of standing, (4) sovereign immunity, and (5) failure to state a claim. Plaintiffs' opposition memorandum, (ECF No. 54) ("Opposition" or "Opp."), fails to defeat any of these bases for dismissal.

In large part, rather than defend the doomed claims contained in the Complaint, the Opposition simply asserts new causes of action and requests for relief that do not appear in Plaintiffs' pleading. That tactic cannot save Plaintiffs' claims because it is "a well-established principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief." *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014), *aff'd sub nom. Budik v. United States*, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014) (citing *Larson v. Northrop Corp.,* 21 F.3d 1164, 1173–74 (D.C. Cir. 1994)). *See also Edwards v. United States*, No. 18-CV-2560 (KBJ), 2020 WL 2800605, at *4 (D.D.C. May 29, 2020) ("the new claims that [plaintiff] brings only in her opposition briefs are not before the Court at present"). Moreover, none of Plaintiffs' new allegations or requests for relief would themselves survive a motion to dismiss. For that reason the Court should not permit Plaintiffs to amend the

Complaint to assert new claims against Governor Cuomo. *See Ward-Johnson v. Glin*, No. 1:19-CV-00534 (CJN), 2020 WL 2770018, at *11 (D.D.C. May 28, 2020) ("leave [to amend] need not be given when the new claims would not survive a motion to dismiss").

## ARGUMENT

### I. PLAINTIFFS HAVE NOT PROPERLY SERVED GOVERNOR CUOMO WITH THE COMPLAINT AND SUMMONS

Plaintiffs claim to have accomplished service of process on Governor Cuomo pursuant to New York Civil Practice Law and Rules ("CPLR") § 307(2), which provides a mechanism for service on a New York State officer sued solely in his or her official capacity. Opp. at 3-4. Plaintiffs have not, however, completed service pursuant to this rule. The Opposition purports to quote the text of CPLR § 307(2), but it misleadingly omits from the quoted excerpt several mandatory steps that Plaintiffs failed to perform.

Mailing the summons and complaint by certified mail to a State officer, as Plaintiffs did here, is not sufficient on its own to complete service under CPLR § 307(2). The rule contains three additional mandatory steps that Plaintiffs failed to complete. First, the certified mailing must be "received in a principal office of the agency" that employs the officer. CPLR § 307(2). Second, service "shall not be effective unless the front of the envelope bears the legend 'URGENT LEGAL MAIL' in capital letters." *Id*. Third, in addition to mailing the summons and complaint to the defendant, the plaintiff must also accomplish "personal service upon the state" by "delivering the summons to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state." *Id*. The rule expressly states that "[s]ervice by certified mail shall not be complete until" these additional steps are performed. *Id*. *See also Randolph v. Office of New York State Comptroller*, 168 A.D.3d 1195, 1196 (3d Dep't 2019) (dismissing proceeding where petitioner failed to comply with CPLR § 307(2) service requirements); *Barclay v. New York State*

*Comm. on Legislative & Exec. Comp.*, 65 Misc. 3d 685, 694 (Sup. Ct. Albany Cty. 2019) (dismissing proceeding against officer in part because petitioner mailed it "in an envelope bearing the legend 'PERSONAL AND CONFIDENTIAL,' rather than 'URGENT LEGAL MAIL'").

Plaintiffs have not completed service pursuant to CPLR § 307(2). First, they failed to mail the summons and Complaint to Governor Cuomo's principal office, located at the State Capitol Building in Albany, New York; instead, they sent the mailing to the New York State Executive Mansion. *See* Opp. at 4. Second, they did not include the words "URGENT LEGAL MAIL" on the envelope containing the mailing. Declaration of Owen T. Conroy ("Conroy Decl.") Ex. 1. And, finally, they did not deliver the summons and Complaint to the Office of the Attorney General. Conroy Decl. ¶ 2. Because Plaintiffs failed to complete the mandatory requirements of CPLR § 307(2), they have not accomplished service on Governor Cuomo.

## II. THE COURT LACKS PERSONAL JURISDICTION OVER GOVERNOR CUOMO

Plaintiffs concede that the Court does not have general jurisdiction over Governor Cuomo, as the Opposition focuses entirely on arguments for specific jurisdiction. Opp. at 4-7. Their arguments for specific jurisdiction fail because D.C.'s long-arm statute does not provide for specific jurisdiction over Governor Cuomo, and the requirements of due process have not been satisfied.

### A. D.C.'s Long-Arm Statute Does Not Provide For Specific Jurisdiction Over Governor Cuomo.

Plaintiffs argue that Governor Cuomo is subject to the Court's jurisdiction based on a provision of the D.C. long-arm statute that permits jurisdiction over an out-of-state resident "as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used

3

or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4); *see* Opp. at 6.

This provision does not provide for jurisdiction over Governor Cuomo, for two reasons. First, Plaintiffs' claims do not arise from an act or omission by Governor Cuomo outside of the District of Columbia that allegedly caused tortious injury in the District. The Complaint contains no allegations whatsoever of any tortious injury to any Plaintiff occurring in the District, much less an injury caused by Governor Cuomo. Rather, the claims in the Complaint are that Governor Cuomo's alleged actions constituted aiding and abetting of crimes against humanity *in the Middle East.* The Opposition expresses a new theory, not alleged in the Complaint, that Governor Cuomo's alleged conduct violated the First Amendment rights of Washington, D.C. resident John Healey by creating a "chilling effect on [his] speech and activities" in the District. Opp. at 7 and Ex. A. But this new claim does not create jurisdiction under § 13-423(a)(4) because the claims against Governor Cuomo asserted in the Complaint do not arise from Mr. Healey's new alleged injury in the District of Columbia.[1]

Second, even if Plaintiffs had alleged that Governor Cuomo caused a tortious injury in the District of Columbia, Plaintiffs have not demonstrated that any of the three "plus factors" of § 13-423(a)(4) apply. They do not allege that Governor Cuomo regularly does business in the District or that he derives substantial revenue there. Nor have they demonstrated that Governor Cuomo engaged in a persistent course of conduct within the District of Columbia that implicates the

---

[1] While the Court may "consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction," *Foote v. Williams*, No. CV 16-2530 (RBW), 2017 WL 3836044, at *3 (D.D.C. Aug. 31, 2017), the Plaintiffs may not simply adopt a new cause of action in opposition to a motion to dismiss. Moreover, as discussed further in Part III, *infra*, Plaintiffs' chilling effect claim would fail even if it had been asserted in the Complaint because Mr. Healy has not alleged "that [he] has suffered, or [he] is facing the threat of, actual concrete harm." *Cato Inst. v. United States Sec. & Exch. Comm'n*, 438 F. Supp. 3d 44, 51 (D.D.C. 2020).

4

statute. Plaintiffs allege that he travelled to the District just nine times in two years, Opp. at 5-6, which is precisely the sort of "[o]ccasional travel to the District" that is "insufficient" to implicate the persistent course of conduct provision. *Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 124 (D.D.C. 2010). *See also Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 25 (D.D.C. 2019) (plaintiff "failed to demonstrate that [defendant's] other travel to the District was not merely sporadic or occasional").[2]

More importantly, all of the trips to the District of Columbia identified by Plaintiffs were, by Plaintiffs' own account, for the purpose of interacting with the federal government or advancing Governor Cuomo's policy agenda. Opp. at 5-6. Pursuant to the "government contacts" exception to D.C.'s long-arm statute, "the 'mere entry [into the District] by non-residents for the purpose of contacting federal government agencies cannot serve as a basis for in personam jurisdiction[.]'" *Akhmetshin*, 407 F. Supp. 3d at 23 (quoting *Rose v. Silver*, 394 A.2d 1368, 1370 (D.C. 1978)). This exception "is intended to (1) protect the right of citizens to freely access and petition the government and (2) prevent the District of Columbia from becoming a national judicial center based solely upon parties' contacts with the federal government." *Lewy*, 723 F. Supp. 2d at 126. In addition to excluding direct meetings with the federal government from the personal jurisdiction analysis, this exception also applies to media appearances in the District by "a non-resident defendant who concerns himself with federal legislation, regulations, and policies in an effort to advance the non-resident defendant's federal policy agenda." *Akhmetshin*, 407 F. Supp. 3d at 24 (internal citation omitted). Because all of Governor Cuomo's trips to the District of Columbia

---

[2] Plaintiffs also allege that the State of New York maintains an office in the District of Columbia, Opp. at 5, but that is irrelevant to the personal jurisdiction analysis, which must be focused on *Governor Cuomo's* contacts. *See, e.g.*, *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 372 (D.D.C. 2015) (chief executive's "contacts with the forum state must be assessed based on his actions—separately from the corporation's contacts with the forum state").

identified by Plaintiffs are subject to the government contacts exception, Plaintiffs have not demonstrated a persistent course of conduct that would permit the Court to exercise personal jurisdiction over Governor Cuomo under § 13-423(a)(4).

### B. Jurisdiction Over Governor Cuomo Would Not Satisfy Due Process.

Even if the D.C. long-arm statute provided for jurisdiction over Governor Cuomo, Plaintiffs have not shown "that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause" because they have not alleged "minimum contacts between the defendant and the forum . . . ." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Just as with the government contacts exception to the long-arm statute, "a defendant's relationships with federal agencies do not enter the calculus of minimum contacts with the District of Columbia for jurisdictional purposes." *Chrysler Corp. v. Gen. Motors Corp.*, 589 F. Supp. 1182, 1196 (D.D.C. 1984). *See also United States v. Wilfred Am. Educ. Corp.*, No. MISC. 86-333, 1987 WL 10501, at *4 (D.D.C. Apr. 23, 1987) ("The right to petition shields from inclusion in the 'minimum contacts' analysis visits to Washington to lobby Congress or to influence the rulemaking or adjudicatory processes of the agencies."). Because all of the contacts between Governor Cuomo and the District identified by Plaintiffs relate to his interactions with the federal government, Plaintiffs have failed to demonstrate minimum contacts sufficient to satisfy due process.[3]

---

[3] Plaintiffs also request jurisdictional discovery in the vague hope of identifying some further, unidentified, contacts between Governor Cuomo and the District. Opp. at 6. The Court should deny this request because a plaintiff seeking such discovery "must make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (internal quotation omitted). "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it is inappropriate to subject defendants to the burden and expense of discovery." *Id.* (internal quotation omitted). In any event, Plaintiffs' request should be denied as there are other independent grounds requiring dismissal of their claims against Governor Cuomo.

### III.    PLAINTIFFS DO NOT HAVE STANDING TO PURSUE A CLAIM AGAINST GOVERNOR CUOMO

Plaintiffs do not have standing to pursue claims against Governor Cuomo because the Complaint does not allege that any Plaintiff suffered an injury that is "fairly traceable to" his "challenged conduct" and "likely to be redressed" by a favorable decision. Cuomo Mot. at 9-10 (quoting *UMC Dev., LLC v. D.C.*, 401 F. Supp. 3d 140, 150 (D.D.C. 2019)). In response to the motion to dismiss, Plaintiffs point to two categories of alleged injuries, neither of which establish standing to sue Governor Cuomo.

First, Plaintiffs cite their claims regarding injuries suffered by Palestinian plaintiffs in the Middle East. Opp. at 8. But Plaintiffs do not allege that Governor Cuomo inflicted these injuries or that he had any direct role in their commission. These injuries are therefore not fairly traceable to any conduct by Governor Cuomo and cannot be redressed by relief awarded as against Governor Cuomo. *See Penkoski v. Bowser*, No. 20-CV-01519 (TNM), 2020 WL 4923620, at *14 (D.D.C. Aug. 21, 2020) (no standing where "even when Plaintiffs do allege concrete and particularized injuries, those injuries are caused by third parties"); *Peterson v. Bd. of Governors of Fed. Reserve Sys.*, 51 F. Supp. 3d 72, 74 (D.D.C. 2014) (no standing where the "injury to Plaintiff is highly indirect and results from the independent action of *multiple* third parties not before the court") (internal citation omitted) (emphasis in original).

Second, Plaintiffs allege a new cause of action, not asserted in the Complaint, that Governor Cuomo's actions violated their First Amendment rights by creating a "chilling effect on the speech and activities" of one of the Plaintiffs. Opp. at 7 and Ex. A. This new claim, asserted for the first time in opposition to the motion to dismiss, is not properly before the court. *See*

7

*Edwards*, 2020 WL 2800605, at *4.[4] Moreover, it would be futile for Plaintiffs to amend the Complaint to plead this new claim because the claim does not create standing. The Supreme Court has held that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," which is required to establish standing. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Therefore, a plaintiff alleging an unconstitutional chill must "unquestionably" allege "some concrete harm (past or immediately threatened) apart from the 'chill' itself." *Cato Inst*., 438 F. Supp. 3d at 51 (citing *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378-79 (D.C. Cir. 1984)).[5] Plaintiffs do not allege concrete harm; rather, they allege that they feel they "cannot express their true feelings" about issues in the Middle East as a result of Governor Cuomo's actions. Opp. at 8. Even if this allegation had been pled in the Complaint, it would not create standing.

### IV. THE CLAIMS AGAINST GOVERNOR CUOMO ARE BARRED BY SOVEREIGN IMMUNITY

While the Complaint was ambiguous on this point, the Opposition confirms that "Gov. Cuomo is being sued in his *official* capacity." Opp. at 4 (emphasis in original). Sovereign immunity therefore bars Plaintiffs' claims against Governor Cuomo in their entirety. A plaintiff may not recover money damages from the State of New York by suing a State official in his official capacity, *see* Cuomo Mot. at 11, and the only relief requested in the Complaint as to Governor Cuomo is a demand for $1 billion in damages. Compl. at pp. 131 & 159.

---

[4] The Complaint contains one vague and unspecific reference in the introductory paragraphs to the alleged "chilling effect" of New York Executive Order No. 157, Compl. at p. 12, but it does not assert a First Amendment claim for chilling Plaintiffs' speech.

[5] "For example, a plaintiff was found to have alleged a concrete injury where he had been 'denied admission to the bar,' 'discharged from state employment,' 'denied the delivery of mail,' or 'required to take an oath on pain of dismissal from state employment.'" *Cato Inst*., 438 F. Supp. 3d at 51 (citing *United Presbyterian*, 738 F.2d at 1378-79).

Plaintiffs attempt to avoid the sovereign immunity bar in two ways, neither of which succeed. First, they seem to suggest that sovereign immunity does not apply if they allege that the damages "will be paid by [Governor Cuomo] personally." Opp. at 11. They cannot have it both ways. Because they emphatically confirmed that this is an "*official* capacity" lawsuit when defending their defective service attempt on Governor Cuomo, *id*. at 4 (emphasis in original), their claims for money damages are barred. *See Bradley v. DeWine*, 55 F. Supp. 3d 31, 38 (D.D.C. 2014) ("The Eleventh Amendment deprives federal courts of subject-matter jurisdiction over an action for money damages brought against a state. A suit against a state official in his official capacity is treated as a suit against the state.").

Second, Plaintiffs attempt to invoke the *Ex Parte Young* doctrine by asserting new claims for injunctive relief that appear nowhere in the Complaint. Opp. at 9 & 14. But once again, claims asserted for the first time in opposition to a motion to dismiss are not properly before the court and should be disregarded. *See Edwards*, 2020 WL 2800605, at *4.

## V. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST GOVERNOR CUOMO

The Complaint contains no well-pled allegations that Governor Cuomo is liable for aiding and abetting violations of the ATS or TVPA. *See* Cuomo Mot. at 11-14. The Opposition fails to respond to any of the cases cited in the motion to dismiss that set forth the relevant standard for aiding and abetting liability. Instead, Plaintiffs cite a single case, *In re S. African Apartheid Litig.*, 624 F. Supp. 2d 336 (S.D.N.Y. 2009), which is an irrelevant decision denying a motion to certify an interlocutory appeal.[6]

---

[6] It is possible that Plaintiffs intended to cite to a different opinion from that action, *In re S. African Apartheid Litig.,* 617 F. Supp. 2d 228 (S.D.N.Y. 2009), but that decision does not support their claims either. In that case, the court denied a motion to dismiss a claim of aiding and abetting liability under the ATS where the defendants were alleged to have "sold heavy trucks, armored personnel carriers, and other specialized vehicles" to South African security forces who

9

The actions Plaintiffs allege Governor Cuomo engaged in—signing an Executive Order regarding how New York State agencies invest their funds, allegedly encouraging other states to enact such orders, and not registering as a foreign agent—do not amount to practical assistance, encouragement, or moral support of any alleged violation of the law of nations. Nor do they amount to action in concert with a foreign state to commit torture or extrajudicial killing. Plaintiffs therefore fail to state a claim for aiding and abetting liability under the ATS and TVPA.

## CONCLUSION

For the foregoing reasons, and those set forth in his moving brief, Governor Cuomo respectfully requests that the Court dismiss the claims against him for insufficient service of process, lack of personal jurisdiction, lack of standing, sovereign immunity, and failure to state a claim.

Dated: New York, New York
       September 9, 2020

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
*Attorney for Governor Cuomo*

By: /s/ Owen T. Conroy
Owen T. Conroy (D.C. Bar No. 991097)
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-6382
Email: Owen.Conroy@ag.ny.gov

---

used those vehicles to carry out attacks on protesting civilians. *Id*. at 264. The defendants were further alleged to have been "fully aware of the crucial role that their vehicles played in the violent suppression of anti-apartheid activities." *Id*. The claims against Governor Cuomo do not remotely allege a similarly direct contribution to a violation of the law of nations.