# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PERSONAL REPRESENTATIVE OF THE
DAWABSHEH FAMILY *et al.*,

                Plaintiffs,

    v.

BENJAMIN NETANYAHU *et al.*,

                Defendants.

Case No. 20 Civ. 555 (DLF)

**[Oral Argument Requested]**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS THE COMPLAINT BY DEFENDANTS
MIRIAM ADELSON, AIPAC, BRIAN SHANKMAN, HOWARD KOHR,
DOV HIKIND, SUSAN LEVIN-ABIR, AND WALID SHOEBAT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 4

I.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV.
      P. 8 BECAUSE THE PLEADING FAILS TO GIVE DEFENDANTS FAIR
      NOTICE OF THE CLAIMS BEING ASSERTED ........................................................... 4

II.   THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE
      PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE UNDER THE POLITICAL
      QUESTION AND ACT OF STATE DOCTRINES ......................................................... 5

      A.    Plaintiffs' Claims Present Nonjusticiable Political Questions ........................... 5

      B.    Plaintiffs' Claims Are Nonjusticiable Under the Act of State Doctrine ............... 10

III.  PLAINTIFFS LACK STANDING TO BRING THIS ACTION ...................................... 11

IV.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
      PLAINTIFFS' CLAIMS UNDER THE ALIEN TORT STATUTE ................................ 12

      A.    Plaintiffs Fail to Overcome the Presumption Against Extraterritoriality ............. 13

      B.    Counts I and II for Aiding and Abetting "the Denationalization and
            Dehumanization of the Palestinian People" and "Rampant Genocide and
            Installation of an Apartheid Regime," Respectively, Fail to State a Claim
            for Primary Violations of International Law ...................................................... 17

      C.    Plaintiffs Fail to Establish That They Have Exhausted Their Remedies .............. 18

V.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TORTURE
      VICTIM PROTECTION ACT ....................................................................................... 19

VI.   CERTAIN OF PLAINTIFFS' CLAIMS ARE TIME-BARRED .................................... 20

VII.  THIS COURT LACKS PERSONAL JURISDICTION OVER CERTAIN
      DEFENDANTS ............................................................................................................. 20

      A.    Plaintiffs Cannot Establish Personal Jurisdiction Over Certain Defendants ........ 20

      B.    Plaintiffs Failed to Effect Service of Process on Certain Defendants .................. 21

VIII. CLAIMS AGAINST DEFENDANTS AIPAC, HOWARD KOHR, AND BRIAN
      SHANKMAN, AND SEPARATELY, DEFENDANT SHOEBAT, ARE BASED
      ON SPEECH PROTECTED BY THE FIRST AMENDMENT AND SHOULD
      BE DISMISSED ............................................................................................................ 25

      A.    Defendants AIPAC, Howard Kohr and Brian Shankman Engaged in
            Protected Lobbying Activity ............................................................................. 26

      B.    Statements Attributed to Defendant Shoebat Constitute Protected Free
            Speech And Do Not Support Any Legally Cognizable Claims Against
            Him. ................................................................................................................. 28

CONCLUSION ........................................................................................................................ 30

i

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Al-Tamimi v. Adelson*,
916 F.3d 1 (D.C. Cir. 2019) ................................................................6, 7

*Al-Tamimi v. Adelson*,
No. 16 Civ. 445 (D.D.C.) ................................................................ *passim*

*Ali v. Mid-Atlantic Settlement Servs., Inc.*,
233 F.R.D. 32 (D.D.C. 2006) ................................................................23

*Anderson v. Gates*,
20 F. Supp. 3d 114 (D.D.C. 2013) ................................................................23

*Atlantigas Corp. v. Nisource, Inc.*,
290 F. Supp. 2d 34 (D.D.C. 2003) ................................................................21

*Baker v. Carr*,
369 U.S. 186 (1962) ................................................................8, 9, 10

*Balintulo v. Daimler AG*,
727 F.3d 174 (2d Cir. 2013) ................................................................14

*Balintulo v. Ford Motor Co.*,
796 F.3d 160 (2d Cir. 2015) ................................................................13

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964) ................................................................10, 11

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ................................................................3

*BEG Investments, LLC v. Alberti*,
85 F. Supp. 3d 13 (D.D.C. 2015) ................................................................27

*Bowoto v. Chevron Corp.*,
621 F.3d 1116 (9th Cir. 2010) ................................................................19

*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) ................................................................26

*Canen v. Wells Fargo Bank, N.A.*,
118 F. Supp. 3d 164 (D.D.C. 2015) ................................................................12, 17, 21

*Capitol Life Ins. Co. v. Rosen*,
    69 F.R.D. 83 (E.D. Pa. 1975) ................................................................23

*Ciralsky v. C.I.A.*,
    355 F.3d 661 (D.C. Cir. 2004) ................................................................4

*Colston v. First Guarantee Commercial Mortg. Corp.*,
    665 F. Supp. 2d 5 (D.D.C. 2009) ............................................................25

*Corrie v. Caterpillar, Inc.*,
    403 F. Supp. 2d 1019 (W.D. Wash. 2005) .....................................10, 18

*Doe v. Drummond Co., Inc.*,
    782 F.3d 576 (11th Cir. 2015) ................................................................14

*Doe v. Exxon Mobil Corp.*,
    69 F. Supp. 3d 75 (D.D.C. 2014) ..............................................15, 18, 19

*Doe v. Exxon Mobil Corp.*,
    No. 01 Civ. 1357(RCL), 2015 WL 5042118 (D.D.C. July 6, 2015) ................13, 14

*Doe v. Nestle, S.A.*,
    929 F.3d 623 (9th Cir. 2018), *cert. granted, Nestle USA, Inc. v. Doe I*, No. 19-
    416, 2020 WL 3578678 (July 2, 2020) .........................................................14

*Doe v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) .......................................................5, 6, 11

*Duarte v. Nolan*,
    190 F. Supp. 3d 8 (D.D.C. 2016) ...........................................................21

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961) ................................................................................26

*Eggink v. Trump*,
    257 F. Supp. 3d 27 (D.D.C. 2017) .........................................................21

*First Chicago Int'l v. United Exch. Co., Ltd.*,
    836 F.2d 1375 (D.C. Cir. 1988) .............................................................20

*Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.*,
    107 F.R.D. 665 (S.D. Fla. 1985) ............................................................23

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949) ................................................................................26

*Honig v. Doe*,
    484 U.S. 305 (1988) ................................................................................18

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries,*
   284 F. Supp. 2d 15 (D.D.C. 2003) ........................................................................12

*Jiggets v. District of Columbia,*
   319 F.R.D. 408 (D.D.C. 2017) ..............................................................................4

*Kiobel v. Royal Dutch Petroleum Co.,*
   569 U.S. 108 (2013) ..............................................................................13, 14, 16

*Klayman v. Obama,*
   125 F. Supp. 3d 67 (D.D.C. 2015) ......................................................................21

*Kowal v. MCI Commc'ns Corp.,*
   16 F.3d 1271 (D.C. Cir. 1994) ............................................................................27

*Krishanthi v. Rajaratnam,*
   No. 09 Civ. 5395, 2010 WL 3429529 (D.N.J. Aug. 26, 2010) ............................12

*Licci v. Lebanese Canadian Bank,*
   834 F.3d 201 (2d Cir. 2016) ................................................................................14

*Marshall Cnty. Health Care Auth. v. Shalala,*
   988 F.2d 1221 (D.C. Cir. 1993) ............................................................................3

*Mastafa v. Chevron Corp.,*
   759 F. Supp. 2d 297 (S.D.N.Y. 2010) ................................................................19

*Mastafa v. Chevron Corp.,*
   770 F.3d 170 (2d. Cir. 2014) ........................................................................13, 14

*Minnesota Mining & Mfg. Co. v. Kirkevold,*
   87 F.R.D. 317 (D. Minn. 1980) ..........................................................................23

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ............................................................................................26

*Ntsebeza v. Daimler AG (In re South African Apartheid Litig.),*
   617 F. Supp. 2d 228 (S.D.N.Y. 2009) ................................................................16

*Oetjen v. Central Leather Co.,*
   246 U.S. 297 (1918) ............................................................................................10

*Okolie v. Future Servs. Gen. Trading & Contracting Co., W.L.L.,*
   102 F. Supp. 3d 172 (D.D.C. 2015) ....................................................................24

*Peled v. Netanyahu,*
   No. 17 Civ. 260 (D.D.C.) ......................................................................................9

*Rovinski v. Rowe*,
    131 F.2d 687 (6th Cir. 1942) ..........................................................................23

*Shaw v. District of Columbia*,
    No. 05-1284, 2006 WL 1371681 (D.D.C. May 15, 2006).......................................23

*Simon v. Republic of Hungary*,
    911 F.3d 1172 (D.C. Cir. 2018) ....................................................................20

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)................................................................................11

*Teamsters Local 639 Emp'rs, Health Trust v. Hileman*,
    988 F. Supp. 2d 18 (D.D.C. 2013) ..................................................................23

*Toms v. Hantman*,
    530 F. Supp. 2d 188 (D.D.C. 2008) .................................................................24

*TRW, Inc. v. Derbyshire*,
    157 F.R.D. 59 (D. Colo. 1994) ......................................................................23

*Underhill v. Hernandez*,
    168 U.S. 250 (1897)...................................................................................10

*United States v. Stevens*,
    559 U.S. 460 (2010)..............................................................................25, 26

*Viray v. Fed. Deposit Ins. Corp.*,
    No. 09-1603, 2010 WL 11538694 (D.D.C. July 19, 2010), *aff'd sub nom.*
    *Viray v. F.D.I.C.*, 418 F. App'x 1 (D.C. Cir. 2011)................................................3

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of N.Y., Inc.*,
    889 F. Supp. 2d 912 (S.D. Tex. 2012) ..............................................................19

*Wilson-Greene v. Dep't of Youth Rehab. Servs.*,
    No. 06cv2262, 2007 WL 2007557 (D.D.C. July 9, 2007)......................................24

*World Wide Minerals Ltd. v. Republic of Kazakhstan*,
    296 F.3d 1154 (D.C. Cir. 2002) .....................................................................10

**Federal Statutes & Rules**

18 U.S.C. § 2331 *et seq.*, Anti-Terrorism Act ...........................................................3, 19

28 U.S.C § 1350, Torture Victim Protection Act .................................................3, 19, 20

28 U.S.C. § 1927...........................................................................................9

Fed. R. Civ. P.

   R. 4 ................................................................................................................23

   R. 8 ...................................................................................................4, 5, 20

   R. 12(b) ................................................................................................ *passim*

Fed. R. Evid. 201 .............................................................................................3, 18

**State Statutes**

D.C. Super. Ct. Rule 4 .............................................................................21, 22, 23

**Other Authorities**

FIDF "About Us" and "Mission," *available at* https://www.fidf.org/about-fidf ...........................3

Hagar Shezaf, "Family of Duma Arson Attack Victims to Testify Ahead of
   Murderer Sentencing," HAARETZ (July 13, 2020), *available at*
   https://www.haaretz.com/middle-east-news/palestinians/.premium-child-
   survivor-of-duma-arson-attack-to-testify-ahead-of-killer-sentencing-
   1.8987394) ..............................................................................................18

"Israeli settler found guilty of murder in arson attack on Palestinian family,"
   REUTERS (May 18, 2020), *available at* https://www.reuters.com/article/us-
   israel-palestinians-duma-verdict/israeli-settler-found-guilty-of-murder-in-
   arson-attack-on-palestinian-family-idUSKBN22U0L5 ...........................................18

Defendants Miriam Adelson, AIPAC, Brian Shankman, Howard Kohr, Dov Hikind, Susan Levin-Abir, and Walid Shoebat (collectively, the "Moving Defendants") respectfully submit this reply memorandum of law in further support of their motion (the motion and brief in support referred to herein as the "Motion") to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiffs' Complaint alleges that, over the last forty years, Israel's government, acting through its prime ministers, including "state actors (Sharon, Olmstead,[2] [and] Netanyahu[)]," (Compl. ¶ 78), has implemented policies designed to force non-Jews from the "Occupied Territories" or "OPT" through concerted efforts of the Israeli Defense Forces ("IDF"), which allegedly trained and directed Israeli settlers in Gaza and the West Bank to perpetrate violence on Palestinians in an effort to expand Jewish settlements.  The Complaint thus implicates the most sensitive questions of foreign policy.  Indeed, Plaintiffs ask this Court to take positions on issues on which both the United States and Israeli governments have expressed decided views. As Defendants established in their Motion, the Complaint is therefore nonjusticiable under both the Political Question and Act of State doctrines.

To avoid these jurisdictional bars, Plaintiffs respond, not with applicable law, but by mischaracterizing and contradicting their own Complaint.

---

[1] All of the listed Moving Defendants join this brief, except with respect to Section VII, concerning personal jurisdiction and improper service, and Section VIII, concerning certain First Amendment defenses.  The Defendants joining those particular sections are listed in those sections as noted *infra*.

[2] Presumably Plaintiffs mean to refer to former Israeli Prime Minister Ehud Olmert; there is no "former PM Olmstead."  *See, e.g.*, Compl. ¶ 83.

The Complaint centers on Plaintiffs' emphatic assertion that Israel's government has implemented official policies, devised by its prime ministers and implemented by the IDF with assistance from settlers, to violently expel non-Jews from the OPT through settlement expansion. For example, the Complaint alleges that Prime Minister Netanyahu "and former PM Sharon decided forty years ago that Palestinians had to become a denationalized, dehumanized, and an irrelevant population" and states that, "[a]s a result of the policies implemented by [Netanyahu], the Palestinians have no country to call their own," Compl. at 7-8, and that "Israel is a ruthless, immoral trespasser on Palestinian land and has pillaged private property owned by the Plaintiffs named herein and their ancestors," *id.* ¶ 77.

Incredibly, Plaintiffs now state in their brief that their claims do *not* implicate any policy of the Israeli government or official action of the Israeli military: "no Israeli government has ever supported the theft or wanton destruction of private property (a most despicable crime as described in the Old testament [sic]) or genocide, ethnic cleansing, or money laundering." Plaintiffs' Opposition Brief ("Opp. Br.") at 5.  To accept that assertion, however, this Court would have to ignore the central allegations and theory underlying Plaintiffs' Complaint as drafted.

Despite Plaintiffs' disingenuous interpretation of their Complaint, their allegations of wrongdoing *are based upon and inextricable from* the alleged policies and directives of Israel's government and military.  Because Plaintiffs' claims require this Court to adjudicate questions on which it may not pass judgment, the Complaint must be dismissed.

Defendants' Motion also demonstrated that Plaintiffs lack Article III standing and that they fail to establish subject matter jurisdiction under the Alien Tort Statute ("ATS") because their generalized and conclusory allegations fail to tie any Defendant's alleged conduct to any

Plaintiff's alleged injury.  Plaintiffs offer no meaningful response to these jurisdictional

arguments and point to no authority that would create jurisdiction where, as here, all that

Plaintiffs have alleged is that Defendants donated money to charities supporting the IDF[3] and/or

Israeli settlements or spoke out in favor of settlement expansion.  Plaintiffs' claims under the

ATS and the Torture Victim Protection Act ("TVPA") fail on these and other grounds that

Plaintiffs largely fail to address in their opposition brief.

Finally, Plaintiffs fail to rebut certain Defendants' showing that this Court lacks personal

jurisdiction over them because they have no contacts with this District or because Plaintiffs

failed to effect service on them.  Plaintiffs do not address Defendants' arguments that Plaintiffs

have failed to establish either general or specific jurisdiction over certain Defendants at all, thus

waiving them and mandating the dismissal of those Defendants.  Plaintiffs' arguments

attempting to excuse their defective service are incorrect as a matter of law.  Plaintiffs claim that

---

[3] Plaintiffs' allegations about the nature of FIDF's use of donations to the organization is flatly
incorrect.  FIDF's mission statement notes that FIDF is "a non-political, nonmilitary
organization" that provides "educational, cultural, recreational, and social services programs" for
IDF soldiers, veterans, and family members.  *See* FIDF, "Mission" and "About Us," *available at*
https://www.fidf.org/about-fidf.  Plaintiffs' counsel and Plaintiff Al-Tamimi are well aware that
FIDF does not donate funds to support Israeli military operations, nor pay for equipment or
weapons for soldiers—FIDF's mission statement is available on FIDF's website, which the *Al-
Tamimi* Plaintiffs (including Al-Tamimi, who is also a plaintiff in this case) cited in their
Amended Complaint.  *See Al-Tamimi v. Adelson*, No. 16 Civ. 445 (D.D.C.), Am. Compl. ¶ 49
n.116.

The Court may take judicial notice of FIDF's mission statement pursuant to Federal Rule of
Evidence 201.  *See, e.g.*, *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1228
(D.C. Cir. 1993) (court may look to record of another proceeding "to avoid unnecessary
proceedings when an undisputed fact on the public record makes it clear that the plaintiff does
not state a claim upon which relief could be granted"); *Viray v. Fed. Deposit Ins. Corp.*, No. 09
Civ. 1603, 2010 WL 11538694, at *1 (D.D.C. July 19, 2010), *aff'd sub nom. Viray v. F.D.I.C.*,
418 F. App'x 1 n.1 (D.C. Cir. 2011) (of "the facts from various documents related to prior
litigation" where plaintiff "failed to include the relevant facts in her complaint").  *Cf. Banneker
Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (where plaintiff refers to
document in its complaint, court may find that document is incorporated by reference).

this Court may assert jurisdiction so long as the Defendants merely had actual notice of this

lawsuit, but that is not the law.  Rather, Plaintiffs were required to comply with the District of

Columbia statutes governing service.  Their failure to do so deprives this Court of jurisdiction

over the improperly served Defendants, and further requires dismissal of the action against them.

For these reasons and those detailed below and in Defendants' Motion, this action should

be dismissed.

## ARGUMENT

### I.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 8 BECAUSE THE PLEADING FAILS TO GIVE DEFENDANTS FAIR NOTICE OF THE CLAIMS BEING ASSERTED

As Defendants established in their Motion, Plaintiffs' 175-page Complaint should be

dismissed because it fails to meet the bare minimum requirement to "give fair notice of the

claims being asserted" and the grounds upon which they rest, "so as to permit the adverse party

the opportunity to file a responsive answer [and] prepare an adequate defense."  *Jiggets v.

District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017) (internal quotation marks and citation

omitted); *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 669 (D.C. Cir. 2004) (holding district court's

dismissal of a complaint was an appropriate exercise of discretion where the "amended

complaint [was] still prolix and burdened with a bloated mass of unnecessary detail"); *see

generally* Defendants' Br. in Support of Mot. to Dismiss ("Moving Br.") at 15-17.

In response, Plaintiffs merely repeat their conclusory allegations, doubling down on their

generalized grievances by "Palestinians" as a group, over the course of decades, without tying

any particular conduct of any particular Defendant to any of the alleged injuries suffered by the

particular Plaintiffs identified in the Complaint.  Compounding the issue, and as discussed in the

Preliminary Statement and in Section II below, Plaintiffs' brief attempts to fundamentally alter

their own allegations in an effort to salvage the Complaint.

For these reasons and those discussed in Defendants' Motion, the Complaint is subject to dismissal under Rule 8.

## II.     THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' CLAIMS ARE NONJUSTICIABLE UNDER THE POLITICAL QUESTION AND ACT OF STATE DOCTRINES

As Defendants established in the Motion, because this case implicates sensitive foreign-policy prerogatives of the Executive, it must be dismissed based on the political question and act of state doctrines.  Plaintiffs offer no meaningful rebuttal.

### A.     Plaintiffs' Claims Present Nonjusticiable Political Questions

As detailed in Defendants' Motion, this action is nonjusticiable because Plaintiffs seek a U.S. judicial determination that Israeli activities in the West Bank and Gaza constitute genocide (Counts I and II).  Plaintiffs' genocide claims rest on the notion that Israeli settlement activities have taken place on Palestinian land as part of a policy carried out by Israel's government to achieve the "ethnic cleansing" and "genocide" of Palestinian nationals.  *See generally* Compl. at 5-14 (Introduction/Summary).  All of Plaintiffs' alleged injuries, to the extent any injuries are alleged at all, arise from those state-sponsored settlement activities or Israeli military activities during armed conflicts in the West Bank and Gaza.

In *Doe v. State of Israel*, 400 F. Supp. 2d 86, 96 (D.D.C. 2005) ("*Doe I*"), remarkably similar claims were asserted against the U.S. President and Secretary of State, the State of Israel and a number of its officials (including several IDF generals), a number of American defense contractors and manufacturers, and so-called "settler defendants."  This Court held that those claims raised nonjusticiable political questions, as the plaintiffs' claims there "would have this Court adjudicate the rights and liabilities of the Palestinian and Israeli people," requiring determinations (i) regarding "to whom the land in the West Bank actually belongs," (ii) "that Israel's self-defense policies are tantamount to terrorism," (iii) "that the Israeli settlement

activities are illegal or tortious," and (iv) "characteriz[ing] the ongoing armed conflict in the West Bank as either 'genocide' . . . or self-defense." *Id.* at 112.

Seeking to avoid the bar of the political question doctrine, Plaintiffs attempt to liken their claims here to those in *Al-Tamimi v. Adelson*, 916 F.3d 1 (D.C. Cir. 2019), but that case is fundamentally different from this one.[4]  In *Al-Tamimi*, the plaintiffs allege that the Israeli government and its military play a supporting, but not integral, role in the alleged tortious conduct.  *See generally Al-Tamimi* Complaint, No. 16 Civ. 445 (D.D.C.).  Still, the district court initially dismissed the *Al-Tamimi* complaint on political question grounds.  On appeal, the *Al-Tamimi* plaintiffs expressly waived any claims based on allegations of wrongdoing by the Israeli army and narrowed their claims solely to those arising from the conduct of non-governmental Israeli settlers.  916 F.3d at 13.  That waiver was critical to the D.C. Circuit's finding that the *Al-Tamimi* complaint was not barred by the political question doctrine:

> Here, the Department of Justice expressed its opinion that judicial resolution of the plaintiffs' complaint could create an inter-branch conflict because, "[g]iven the level of political and military support provided Israel by the American government, a judicial finding that the Israeli armed forces had committed the alleged offenses would 'implicitly condemn American foreign policy by suggesting that the [government's] support of Israel is wrongful.'"  Gov't Appellee's Br. 16.  This concern, although entitled to deference, is now moot as the plaintiffs have waived any theory of liability based on the conduct of the Israeli military.

*Id.*

In this case, Plaintiffs offer a fundamentally different—and conflicting—narrative: they do not allege that the Israeli military merely supported alleged tortious conduct committed by settlers.  Rather, they allege a concerted, government-directed policy, authorized by Israel's

---

[4] The plaintiffs in *Al-Tamimi,* some of whom overlap with the Plaintiffs here, are represented by the same lead counsel.

current and past prime ministers and carried out by the IDF, to use the settlers to effect a national policy to commit genocide, establish an "apartheid regime," and force non-Jews from the OPT. *See* Compl. ¶¶ 301-08.

For example, Plaintiffs allege that Prime Minister Netanyahu "started an ethnic clean[s]ing/genocidal campaign against the Palestinian people in 1998," *id.* at 6, "authorized Israeli Army leadership to adopt policies in the OPT designed to effectuate extra-judicial killings," *id.*, and even used the legislative process to pass laws implementing these alleged plans, *see id.* ¶ 67 (citing Netanyahu's introduction of the "Family Separation Act"). *See also id.* at 7 (Netanyahu "and former PM Sharon decided forty years ago that Palestinians had to become [] denationalized [and] dehumanized"); *id.* at 8 ("As a result of the policies implemented by [Netanyahu], the Palestinians have no country to call their own."); *id.* ¶ 86 ("Approximately fifty years ago, Israeli leadership (e.g. Ben-Gurion) and continuing with state actors PMN Olmert, Barak, Sharon, and Netanyahu, decided that they needed to forcibly remove all Palestinians from the OPT if they wanted to establish a Jewish only enclave in Palestine.").

Additionally, Count I alleges that the Israeli government has for fifty years sought to "denationalize and dehumanize" the Palestinian people by implementing measures such as travel restrictions, curtailment of resources, and violence, which the government perpetrated with the help of IDF soldiers and settlers and with financing and moral support from the Moving Defendants. *See, e.g.*, Compl. ¶¶ 93-95 (describing alleged violence by IDF officers); ¶ 287 (alleging that, "without the support of the Israeli Army, settlers couldn't kill livestock" and commit other harassment and violence against Palestinians); ¶ 123 (alleging an "Israeli agenda" to "wipe out every trace of any Palestinian heritage").

Similarly, Count II alleges that all Palestinians were subjected to violence, discrimination, property loss, and curtailment of rights "[a]s a direct consequence of apartheid, discriminatory policies and practices, torture . . ., extended incarceration for kids . . . and other inhumane practices [that] were crafted by [Netanyahu] and Defendant Weissglas to intimidate Palestinians every day." *Id.* ¶ 304.  Count II further alleges that the Israeli government enlisted the support of IDF officers, "who train racist settlers and supervise their conduct," and that violence against Palestinians was allowed to occur as a result of "the blanket immunity granted by [Prime Minister Netanyahu] and Defendant Weissglas to rogue soldiers and settlers who enjoy maiming and murdering Palestinians." *Id.* ¶ 308; *see also* ¶ 311 (alleging that Netanyahu and Weissglas "adopted all of these measures and use terrorist settlers to do their dirty work"); *see also* ¶ 353.

 Plaintiffs' allegations concerning the participation of the Israeli government and military in the alleged scheme are thus *central to and inextricable from* their claims.  Unlike the plaintiffs in *Al-Tamimi*, Plaintiffs here do not allege *any* misconduct by settlers that can be untethered from the concurrent conduct of the Israeli military and the directives of the Israeli government. Plaintiffs' sole theory of liability against the Moving Defendants is that they aided and abetted the purported official government policy of Israel as carried out through the IDF and settlers. Were Plaintiffs to "waive" their claims based on the conduct of the Israeli government and military in this case, as the plaintiffs did in *Al-Tamimi*, none of Plaintiffs' claims would remain.

Plaintiffs make no attempt to address the factors outlined in *Baker v. Carr*, 369 U.S. 186 (1962), which, applied here, render the Complaint nonjusticiable.[5]  Instead, Plaintiffs

---

[5] As detailed in the Motion, Plaintiffs ask this Court to pass on the propriety of Israeli settlement expansion (a policy the United States executive branch has expressly supported), rule that providing funds to the Israeli military amounts to genocide (even though the United States

mischaracterize their own Complaint and assert, contrary to their own allegations, that no Israeli

government policy is in issue.  *Compare* Opp. Br. at 2 ([T]he Israeli government has never issued

a policy statement approving ethnic cleansing [or] genocide") and *id.* ("Even Prime Minister

Netanyahu viewed the fire-bombing of the Dawabsheh home . . . as a terrorist act"), *with* Compl.

at 8-9 ("[Netanyahu] and former PM Sharon decided forty years ago that Palestinians had to

become a denationalized, dehumanized, and an irrelevant population . . . As a result of the

policies implemented by [Netanyahu], the Palestinians have no country to call their own.") and

*id.* ¶ 304 ("As a direct consequence of apartheid, discriminatory policies and practices, torture. . .

and other inhumane practices were crafted by [Netanyahu] and Defendant Weissglas to

intimidate Palestinians every day.").   The pleading that Plaintiffs describe in their brief bears no

resemblance to the actual Complaint.  To the contrary, Plaintiffs appear to be describing the

allegations that some of them assert in *Al-Tamimi*.[6]

---

government has provided such aid for decades), and find that Israel's decision to deploy its
military in the OPT is tortious.  Each of these rulings would run afoul of the *Baker v. Carr*
factors.

[6] This is one of three actions brought by some of the same plaintiffs, represented by the same
counsel, that are now pending before three different judges of this Court: *Al-Tamimi v. Adelson*,
Case No. 16 Civ. 445 (Judge Chutkan); *Peled v. Netanyahu*, Case No. 17 Civ. 260 (Judge
Walton); and this action.  As discussed here (and detailed in Defendants' submission pursuant to
the Court's order concerning related cases, ECF No. 48), there is overlap among both plaintiffs
and defendants in these three cases.  It is not clear why certain defendants have been named in
some cases but not others.  For example, Plaintiffs assert numerous allegations about the
"Adelson Family," but have named Sheldon Adelson as a defendant only in *Al-Tamimi* and Dr.
Miriam Adelson as a defendant only in this case.  Similarly, notwithstanding similar allegations
across complaints concerning the "Kushner Family," Plaintiffs assert claims only against Jared
Kushner in his capacity as advisor to the President here, but assert claims against the Kushner
Family Foundation in *Peled*.  *See* 28 U.S.C. § 1927.  Nonetheless, as discussed here and in
Defendants' submission on relatedness, the allegations made against the defendants in each case
are different from one another.

Deciding the claims in *this* action would require this Court to pass on sensitive issues of foreign policy, contradict the expressed policy positions of the United States government,[7] and equate the official policies of the Israeli government and its military with genocide.  The Complaint therefore raises inherently political questions that this Court may not adjudicate.

### B.      Plaintiffs' Claims Are Nonjusticiable Under the Act of State Doctrine

Defendants' Motion also established that the act of state doctrine precludes all of Plaintiffs' claims.  *See* Moving Br. at 18-30.  That doctrine prevents U.S. courts from inquiring into the validity of public acts committed by a foreign sovereign within its own territory.  *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964); *accord World Wide Minerals Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164-65 (D.C. Cir. 2002).

Plaintiffs do not dispute that the acts of the military of a foreign nation within its own borders are classic acts of state, nor could they.  *See Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1032 (W.D. Wash. 2005) ("Military orders are official acts of the sovereign."); *Underhill v. Hernandez*, 168 U.S. 250 (1897); *Oetjen v. Central Leather Co.*, 246 U.S. 297 (1918).  Nor can Plaintiffs dispute that policies allegedly directed and carried out by every Israeli Prime Minister for decades are acts of state.  *See*, *e.g.*, Compl. ¶ 78 (alleging that three Israeli prime ministers whose governments spanned three decades engaged in a "campaign to denationalize and dehumanize the Palestinian people"), ¶ 86 (alleging that five Israeli prime ministers over a period of "approximately fifty years" decided that they "needed to forcibly remove all

---

[7] As detailed in Defendants' Moving Brief, a ruling in Plaintiffs' favor would necessarily mean determining that the foreign policy decisions of the United States with respect to Israel are inappropriate.  *See* Moving Br. at 20-28.  Indeed, a finding that Defendants somehow aided and abetted torture by funding the IDF (an allegation that is patently false, as detailed in footnote 3), would also necessarily imply that the United States government itself aided and abetted torture by providing financial support to the IDF.  The Court may not make such a determination under the political question doctrine.  *See generally*, *e.g.*, *Baker*, 369 U.S. at 186.

Palestinians from the OPT if they wanted to establish a Jewish only enclave in Palestine"); *see also Doe I*, 400 F. Supp. 2d at 114 (holding act of state doctrine barred claims against Israel, the IDF, and high ranking Israeli government officials sued in both their official and personal capacities based on alleged injuries stemming from expansion of settlements).  Finally, Plaintiffs do not dispute that all of the harm that they allege is premised on the expansion of settlements in the West Bank and Gaza, purportedly carried out pursuant to policy directives issued by Israel's government over the last 40 years, which again, are fundamentally acts of state.

Tellingly, in addressing the act of state doctrine, Plaintiffs cite the allegations of the amended complaint in *Al-Tamimi v. Adelson*, not the Complaint here.  *See* Opp. Br. at 5.  But, this Court must rule on the pleading before it.  Because the Complaint in this action invites an improper inquiry "into the validity of [] public acts a recognized foreign sovereign power committed within its own territory," *Sabbatino*, 376 U.S. at 401, it is nonjusticiable under the act of state doctrine and should be dismissed.

## III.    PLAINTIFFS LACK STANDING TO BRING THIS ACTION

Defendants' Motion established that Plaintiffs lack standing to bring this action because none of them can carry their burden to show a "concrete and particularized" injury that is fairly traceable to any alleged conduct of any Defendant and redressable by the relief sought in the Complaint.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545, 1548 (2016); Moving Br. at 31-37.  Plaintiffs' Complaint asserts generalized and conclusory allegations of injury to hundreds of thousands of Palestinians, without detailing any specific injury.  Even in the few paragraphs that allege injury to particular plaintiffs or their family members or property, Plaintiffs do not allege any factual basis to connect Defendants' generally alleged financial or moral support for settlements for the IDF to the particular instances of property loss, bodily injury, arrest, or torture

allegedly committed by settlers or IDF soldiers in the West Bank and Gaza, none of whom are defendants in this action.  *See* Compl. at 5, ¶¶ 14, 337.

In opposition to the Motion, Plaintiffs offer no further detail and no plausible causal link between Defendants' alleged conduct and Plaintiffs' alleged injuries.[8]  Instead, they merely repeat the conclusory and insufficient allegations of the Complaint.

As to Plaintiffs purporting to sue in their capacity as U.S. taxpayers, Defendants' Motion demonstrated that those Plaintiffs lack standing because their generalized grievances do not constitute a particularized injury.  *See* Moving Br. at 36.  Plaintiffs make no response whatsoever, effectively conceding that those Plaintiffs suing as taxpayers lack standing to assert their claims.  *See Canen v. Wells Fargo Bank, N.A.*, 118 F. Supp. 3d 164, 167 (D.D.C. 2015) (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

The Court should thus dismiss the Complaint for lack of standing as well.

## IV.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER THE ALIEN TORT STATUTE

As Defendants' Motion established, this Court lacks subject matter jurisdiction under the ATS because Plaintiffs' Complaint does not meet the requirements under the ATS to:

---

[8] Plaintiffs rely incorrectly on *Krishanthi v. Rajaratnam*, No. 09 Civ. 5395, 2010 WL 3429529 (D.N.J. Aug. 26, 2010), which, to the extent it addressed standing at all, found that the plaintiffs *lacked* standing to bring certain claims.  Further, in *Krishanthi*, the court declined to dismiss the plaintiffs' ATS claim based on allegations that the defendants financed a group that had been officially designated a terrorist group by the U.S government, creating an inherent causal link between the financing and the group's terrorist activities.  No such designation exists in this case; on the contrary, the U.S. government itself provides substantial financial assistance to the Israeli government and its military.

(a) overcome the presumption against extraterritorial application; (b) establish that Plaintiffs are aliens[9]; or (c) establish that (1) the complaint pleads a violation of the law of nations, (2) customary international law recognizes the asserted liability of the particular type of defendant, and (3) this theory of liability (*i.e.*, aiding and abetting) is recognized by customary international law or the "law of nations." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 165-66 (2d Cir. 2015) (citing *Mastafa v. Chevron Corp.*, 770 F.3d 170, 179 (2d. Cir. 2014)); *see Doe v. Exxon Mobil Corp.*, No. 01 Civ. 1357(RCL), 2015 WL 5042118, at *2 (D.D.C. July 6, 2015).

Plaintiffs' opposition focuses solely on whether the Complaint sufficiently overcomes the presumption against extraterritoriality and fails to rebut Defendants' showing that the Complaint did not.  Plaintiffs offer no response to Defendants' demonstration that the Complaint fails to allege a violation of international law.  Plaintiffs further fail to show that exhaustion of their remedies in Israel, which they concede they have not pursued, would be futile.  As discussed below, the Complaint should therefore be dismissed for lack of subject matter jurisdiction under the ATS.

### A.       Plaintiffs Fail to Overcome the Presumption Against Extraterritoriality

As Defendants' Motion explained (Moving Br. at 38-43), and as Plaintiffs concede (Opp. Br. at 13), the ATS must be interpreted in light of the usual "presumption that United States law governs domestically but does not rule the world." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (citation omitted).  Accordingly, Plaintiffs must show that they are *not* "seeking relief for violations of the law of nations occurring outside the United States." *Id.* at 124.

---

[9] As noted in the Motion, the ATS claims fail at this threshold, as the Complaint almost entirely fails to allege the nationality of each Plaintiff, and several Plaintiffs appear to be U.S. citizens. *See* Moving Br. at 37 n.16.  Plaintiffs do not address their citizenship in the opposition brief.

Plaintiffs do not dispute that the underlying violations of international law in this case are alleged to have occurred in the West Bank and Gaza, not the United States. Rather, they argue in conclusory fashion that funding flowed from the U.S. to settlements and the IDF through certain tax-exempt entities, and that certain Defendants' speech in the U.S. encouraged alleged wrongdoing abroad. *See* Moving Br. at 39-43. Such allegations are not sufficient to overcome the presumption against extraterritoriality.

Absent "exceptional" circumstances, the presumption against extraterritoriality "will not be displaced without allegations of *substantial and specific* U.S.-based conduct relevant to the ATS claims," *Exxon Mobil*, 2015 WL 5042118 at *8 (emphasis added), that "touch and concern" the United States with sufficient force to displace the presumption, *Kiobel*, 569 U.S. at 124-25. As detailed in the Moving Brief, merely providing funds to a foreign entity from within the United States does not overcome the *Kiobel* presumption. *See Balintulo v. Daimler AG*, 727 F.3d 174, 192 (2d Cir. 2013); *Exxon Mobil*, 2015 WL 5042118, at *13; *Mastafa*, 770 F.3d at 190; *see also Doe v. Drummond Co., Inc.*, 782 F.3d 576, 598 (11th Cir. 2015).[10]

Here, Defendants' alleged domestic activities bear no connection, let alone a "substantial and significant" one, to the acts of torture and genocide the Plaintiffs allege. Apart from their general assertion that "substantial connections are pled" in the Complaint (Opp. Br. at 15),

---

[10] Courts rarely find that mere transfers of funds through U.S. entities sufficiently "touch[] and concern[]" the United States. Where they have, those cases involved extreme situations, such as transfers to entities subject to sanction by the U.S. government or affiliated with foreign organizations designated as "terrorists," or where corporations provided funds and assistance to facilitate child labor in order to keep their supply costs artificially low. *See Licci v. Lebanese Canadian Bank*, 834 F.3d 201, 216 (2d Cir. 2016) (involving transfers to an entity affiliated with Hezbollah, which is a U.S.-designated terrorist organization); *Doe v. Nestle, S.A.*, 929 F.3d 623, 642 (9th Cir. 2018), *cert. granted*, *Nestle USA, Inc. v. Doe I*, No. 19-416, 2020 WL 3578678 (July 2, 2020) (involving corporate liability for facilitating child labor in order to suppress supply costs). Plaintiffs do not and cannot make such allegations here.

Plaintiffs do not elaborate.  Instead, they cut and paste several paragraphs from the Complaint (*see id.* at 16-21), which, as detailed in the Moving Brief, are insufficient to displace the presumption against extraterritorial application of the ATS.

Nor do the legal authorities Plaintiffs cite support their arguments.  Plaintiffs purport to rely on *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75 (D.D.C. 2014), but the allegations in that case were far more specific and U.S.-based than those here.  The *Exxon Mobil Corp.* plaintiffs alleged that Indonesian security forces hired by Exxon to provide security at its Indonesian facilities committed certain violent acts in the course of their employment and that Exxon had the ability to control the security forces, was briefed on their activities, and made decisions concerning their deployment, all of which were done from the United States.  *See id.* at 84.

Here, in contrast, even Plaintiffs' most concrete allegations do not come close to the "substantial and specific" allegations in *Exxon Mobil Corp.  See* Compl. ¶ 4(e) (alleging that Defendants "(1) participated in . . . fundraising events . . .  (2) held meetings with settlement leaders, IDF (Israeli army) representatives, and international conglomerate representatives in this judicial district and elsewhere within the United States; (3) sent money to settlements and the IDF from the United States; and/or (4) from their different locations in America, they established and maintained regular telephone, email, fax, telegraph, mail, and other communications with overseas settlement officials, including security coordinators paid for by U.S. donors").  Unlike the *Exxon Mobil Corp.* plaintiffs, Plaintiffs here do not allege that Defendants controlled the application of any funds they donated or the conduct of any IDF forces or settlers who allegedly carried out wrongful acts.  On the contrary, the Complaint alleges that the Israeli government, including the military and the prime minister, directed those actions.

Plaintiffs' reliance on *Ntsebeza v. Daimler AG (In re South African Apartheid Litig.)*, 617 F. Supp. 2d 228 (S.D.N.Y. 2009), is also misplaced, given the *Ntsebeza* court's reliance on a liberal formulation of the standard for extraterritoriality that was later rejected and narrowed by the Supreme Court's rulings in *Morrison* and *Kiobel*. *See id.* at 246-47. Even if the correct standard were applied, the *Ntsebeza* case is distinguishable. There, the court found sufficient the plaintiffs' allegations that defendant Daimler provided information about anti-apartheid individuals to South African security forces, knew that the security forces would use those names to commit violence, and directly participated in interrogations (*id.* 264); that defendant IBM provided the security forces with both software and specific training on how to track such individuals, who became victims of alleged violence (*id.* at 265); and that Daimler sold military vehicles directly to the security forces with knowledge of how they would be used (*id.* at 267). In contrast, however, the court found the allegations against certain bank defendants to be insufficient, holding that "supplying a violator of the law of nations with funds—even funds that could not have been obtained but for those loans—is not sufficiently connected to the primary violation to fulfill the *actus reus* requirement of aiding and abetting a violation of the law of nations." *Id.* at 269.

Here, Plaintiffs allege that Defendants' alleged donations made possible certain expenditures by the IDF and settlements, including, but not limited to those expenditures Plaintiffs claim contributed to violent acts. Like the bank transfers in *Ntsezeba*, Defendants' alleged donations to charities and the IDF are not sufficiently connected to Plaintiffs' allegations of wrongdoing to support their claim.

For the reasons discussed *infra* and in the Moving Brief, Plaintiffs' allegations (1) do not state a claim for aiding and abetting liability, and (2) are in all events insufficient to plausibly

allege that Defendants aided and abetted international law violations *from within the United States*.  Thus, their ATS claim fails to allege domestic conduct sufficient to overcome the presumption against extraterritoriality, and it must, therefore, fail.

    **B.**    **Counts I and II for Aiding and Abetting "the Denationalization and Dehumanization of the Palestinian People" and "Rampant Genocide and Installation of an Apartheid Regime," Respectively, Fail to State a Claim for Primary Violations of International Law**

Beyond their meritless arguments concerning extraterritoriality, Plaintiffs simply do not address Defendants' arguments concerning the lack of subject matter jurisdiction under the ATS. In particular, Plaintiffs offer no rebuttal whatsoever to Defendants' showing that the Complaint fails to allege a violation of the law of nations.  As Defendants' Motion established, Plaintiffs do not allege any primary violation of international law.  Their sole theory of liability rests on allegations that Defendants aided and abetted alleged torts committed by the Israeli government, the IDF and Israeli settlers.  But, as detailed in the Motion, secondary violations of international law fail to meet the requirements set out by the Supreme Court for recognizing new causes of action under the ATS.  Moving Br. at 44-46.  Even if it were an established standard of international law, Plaintiffs do not come close to alleging facts necessary to establish the requisite *actus reus* or *mens rea* to establish aiding and abetting liability.  *See id.* at 46-52. Plaintiffs' complete silence in response to these arguments concedes the points as a matter of law.  *Canen*, 118 F. Supp. 3d at 167.

Because Plaintiffs' Complaint fails to set forth a claim for any violation of international law, Plaintiffs cannot invoke the Court's ATS jurisdiction, and the Complaint should be dismissed.

### C.    Plaintiffs Fail to Establish That They Have Exhausted Their Remedies

Even if the Complaint pled an ATS claim, it could not be asserted in a U.S. court before Plaintiffs exhausted their local remedies in Israel.  *See Exxon Mobil Corp.*, 69 F. Supp. 3d at 89 ("Support for some form of exhaustion requirement for claims arising under the ATS has grown in recent years."); *see* Moving Br. at 52-53.  As established in Defendants' Motion, local remedies are available in Israel for precisely the type of harm Plaintiffs allege.  A federal court so held in *Corrie*, 403 F. Supp. 2d 1019, a lawsuit by the family of a U.S. citizen killed by an Israeli army bulldozer in the Gaza Strip.  *Id.* at 1025-26  ("Israeli tort law provides adequate remedies for plaintiffs injured as a result of tortious conduct.").  More recently, the Israeli government prosecuted a criminal case against the suspected killers of members of Dawabsheh family in which the Dawabsheh family was invited to testify, resulting in a conviction.[11]

Plaintiffs, in opposition, cannot demonstrate that exhaustion of their remedies in the Israeli courts would be futile, a showing that Plaintiffs concede it is their burden to make.  Opp. Br. at 23 (citing *Honig v. Doe*, 484 U.S. 305, 325-29 (1988) (noting that a plaintiff may "rebut [a] showing [of failure to exhaust remedies] with a demonstration of futility")).  Plaintiffs offer no non-conclusory basis for their claim of futility, however, and do not address the court's finding in *Corrie*, *supra*, or Israel's criminal prosecution, in its own courts, of the same injuries of which Plaintiff Dawabsheh now complains.  Because Plaintiffs have not exhausted their local

---

[11] *See* Hagar Shezaf, "Family of Duma Arson Attack Victims to Testify Ahead of Murderer Sentencing," HAARETZ (July 13, 2020), *available at* https://www.haaretz.com/middle-east-news/palestinians/.premium-child-survivor-of-duma-arson-attack-to-testify-ahead-of-killer-sentencing-1.8987394); "Israeli settler found guilty of murder in arson attack on Palestinian family," REUTERS (May 18, 2020), *available at* https://www.reuters.com/article/us-israel-palestinians-duma-verdict/israeli-settler-found-guilty-of-murder-in-arson-attack-on-palestinian-family-idUSKBN22U0L5; *see also* Fed. R. Evid. 201 (the court may take judicial notice of a fact "not subject to reasonable dispute").

remedies and cannot demonstrate that such exhaustion would be futile, their claims should be dismissed on this ground as well.[12]

## V.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TORTURE VICTIM PROTECTION ACT

In their Motion, Defendants explained that the language of the TVPA does not provide a cause of action for aiding and abetting liability.  Given that other similar statutes, such as the Anti-Terrorism Act, expressly provide for an aiding and abetting claim, the TVPA must be read to exclude such a remedy.  *See* Moving Br. at 54-55; *compare* TVPA, 28 U.S.C. § 1350 note, *with* Anti-Terrorism Act, 18 U.S.C. § 2333(d)(2).  On this basis, most courts to address the availability of aiding and abetting liability under the TVPA have rejected it.  *See, e.g.*, *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1128 (9th Cir. 2010); *Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of N.Y., Inc.*, 889 F. Supp. 2d 912, 924–25 (S.D. Tex. 2012); *Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010).

In opposition, Plaintiffs note, correctly, that the courts in this Circuit have not yet ruled on the issue, but they offer no basis to read an aiding and abetting remedy into the statute, and there is none.  Plaintiffs, concededly, do not allege that any of the Defendants committed a *primary* violation of the TVPA, which proscribes "torture" and "extrajudicial killing."  Thus, Plaintiffs' TVPA claim fails.[13]

---

[12] The decision in *Exxon Mobil Corp.*, 69 F. Supp. 3d 75 (D.D.C. 2014), does not support Plaintiffs' position.  In *Exxon Mobil Corp.*, the plaintiffs demonstrated the unavailability of remedies in Indonesian human rights tribunals based on U.S. State Department reports and other concrete evidence, while the defendant could not offer any example of an Indonesian court permitting access to hear human rights violations.  *Id*. at 90.  Here, in contrast, Plaintiffs offer no specific support for their futility claim, and fail to address Defendants' showing of the adequacy of Israeli courts to address the exact harms alleged in the Complaint.

[13] Plaintiffs do not dispute or even address that the TVPA does not impose liability on organizational defendants.  *See* Moving Br. at 54.  Thus, Plaintiffs apparently concede that they cannot assert a TVPA claim against defendant AIPAC.

Further, for the same reasons as discussed above, Plaintiffs make no meaningful response to Defendants' showing that Plaintiffs failed to exhaust their remedies in Israel, an express statutory precondition to their claim.  Dismissal is warranted on this ground as well.

## VI.   CERTAIN OF PLAINTIFFS' CLAIMS ARE TIME-BARRED

As shown in Defendants' Motion, although it is unclear from the Complaint during what time period Plaintiffs' purported injuries occurred, at least some of Plaintiffs' claims are time-barred under the ten-year statute of limitations expressly imposed under the TVPA and applied by at least four Circuits to claims under the ATS.  *See* Moving Br. at 55-56.  Plaintiffs' only response is that Defendants have not identified which of Plaintiffs' claims are barred by the ten-year limitations period, and that discovery is needed to determine the timing of Plaintiffs' injuries.[14]  But it is Plaintiffs' burden to plead their claims with sufficient detail to put Defendants on notice of the nature and timing of their claims.  Fed. R. Civ. P. 8.  And Plaintiffs do not identify any category of "records" necessary for them to accurately date their own alleged injuries.  In short, Plaintiffs effectively concede that, to the extent they seek redress for injuries more than ten years prior to commencement of this action, their claims are time-barred.

## VII.   THIS COURT LACKS PERSONAL JURISDICTION OVER CERTAIN DEFENDANTS

### A.    Plaintiffs Cannot Establish Personal Jurisdiction Over Certain Defendants

In their Motion, Defendants Miriam Adelson, Dov Hikind, Susan Levin-Abir, and Walid Shoebat explained why Plaintiffs failed to meet their burden to establish that the Court has personal jurisdiction over them.  *See* Moving Br. at 56-62; Appendix A.  *See First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (plaintiff "must allege specific

---

[14] Plaintiffs' citation to *Simon v. Republic of Hungary*, 911 F.3d 1172 (D.C. Cir. 2018), is inapposite, as that case did not address any statute of limitations issue.

acts connecting each defendant with the forum"); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) (plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction).  With respect to these Defendants, Plaintiffs have not alleged either general jurisdiction (i.e., contacts with the District that "are so constant and pervasive as to render [them] essentially at home in the forum state," *Duarte v. Nolan*, 190 F. Supp. 3d 8, 12 (D.D.C. 2016)), nor specific jurisdiction under the District of Columbia's long-arm statute.  *See Eggink v. Trump*, 257 F. Supp. 3d 27, 29 (D.D.C. 2017).

Plaintiffs' opposition offers no response whatsoever to these arguments and, indeed, is completely silent on the issue of personal jurisdiction, thereby conceding the absence of personal jurisdiction over Defendants Adelson, Hikind, Levin-Abir, and Shoebat.  *See Canen*, 118 F. Supp. 3d at 167.  Given Plaintiffs' failure to remedy their deficient showing,  the Complaint must be dismissed as against Defendants Adelson, Hikind, Levin-Abir, and Shoebat because the Court lacks personal jurisdiction over them under Rule 12(b)(2).[15]

### B.    Plaintiffs Failed to Effect Service of Process on Certain Defendants

Defendants Miriam Adelson, AIPAC, Brian Shankman, Howard Kohr, Susan Levin-Abir, and Walid Shoebat also established in the Motion that Plaintiffs failed to properly serve them with the Summons and Complaint in this action, requiring dismissal under Rule 12(b)(5).  *See* Moving Br. at 62-66; Appendix B.

Specifically, Plaintiffs cannot meet their burden to show proper service, or good cause that would justify extending their time to complete service, *Klayman v. Obama*, 125 F. Supp. 3d 67, 77 (D.D.C. 2015), because Plaintiffs failed to comply with District of Columbia Superior

---

[15] *See* the Moving Br. at 56-62, Appendix C, and the signed declaration of Defendant Levin-Abir, whose averments as to her lack of contacts with the District of Columbia (and the Court's resulting lack of personal jurisdiction over her) were not contradicted in any respect by Plaintiffs.

Court Rule 4(c), which governs service of process by certified or registered mail. That statute requires proof that the pleadings were delivered by certified or registered mail to the defendant or to a person of suitable age and discretion residing at the defendant's "dwelling or usual place of abode." D.C. Super. Ct. Rule 4(e)(2).

As each of the above-mentioned Defendants established in the Motion, Plaintiffs have not established that *any* of the return receipts for Plaintiffs' purported service were signed by the Defendants themselves or by anyone residing at their "dwelling place[s] or usual place[s] of abode."[16] Rather, Plaintiffs sent the summonses and complaints to business addresses or places of religious worship, in some instances with no discernable connection to a residence or any Defendant, let alone the residence of any of the Defendants. *See, e.g.*, Moving Br. Appendix B (purported service on Miriam Adelson at the address of the Las Vegas Sands Convention Center; purported service on Susan Levin-Abir at a synagogue in West Palm Beach; purported service on Walid Shoebat at a business address; purported service on Defendants Kohr and Shankman at AIPAC's headquarters signed by an individual other than Kohr or Shankman). Nor have Plaintiffs established that *any* of the Defendants actually received the improperly-served Complaint and summonses after they were purportedly delivered to the incorrect addresses discussed above. Thus, Plaintiffs' statement that "Postal Service documents . . . show that the Complaint and summonses were indeed delivered to, and reached, the Defendants" (Opp. Br. at 30) is flatly incorrect and, indeed, contradicted by the very Postal Service documents Plaintiffs cite.

---

[16] With respect to AIPAC, Plaintiffs were required to serve an individual that is "an officer, managing or general agent, or an agent authorized to accept service" pursuant to D.C. Super. Ct. Rule. 4(h). *See generally*, Moving Br. Appendix B at B-2 – B-3. Plaintiffs' mailing to the "front desk/mail room" does not meet this showing. *See id.*

Recognizing their failure to comply with the statutory requirements for service, Plaintiffs instead argue that, so long as the Defendants had "actual notice" of the lawsuit, and Plaintiffs made a "good faith effort" to effect service, no more is required. Opp. Br. at 29-30. But none of the authorities Plaintiffs cite support this proposition. On the contrary, in each of the cases cited by Plaintiffs, either the service met the technical requirements under the governing statute or the there was a showing that the defendant was evading service in bad faith.[17] Plaintiffs make neither showing here.

Moreover, this Court has required strict adherence to the District of Columbia's service rules and has never relaxed the requirements to permit mere notice of the lawsuit to suffice. *See Shaw v. District of Columbia*, No. 05-1284, 2006 WL 1371681, at *5 (D.D.C. May 15, 2006) ("It is well-established that a named defendant's actual knowledge of a lawsuit is no substitute for proper service of process under Federal Rule of Civil Procedure 4."); *Teamsters Local 639 Emp'rs, Health Trust v. Hileman*, 988 F. Supp. 2d 18, 24 (D.D.C. 2013) ("Although proper service can be waived, actual notice of a lawsuit is insufficient to constitute waiver and establish personal jurisdiction."); *see also Anderson v. Gates*, 20 F. Supp. 3d 114, 122-23 (D.D.C. 2013)

---

[17] *Ali v. Mid-Atlantic Settlement Servs., Inc.*, 233 F.R.D. 32 (D.D.C. 2006) (service technically complied with federal rules and Pennsylvania law); *TRW, Inc. v. Derbyshire*, 157 F.R.D. 59, 60 (D. Colo. 1994) (permitting service on defendant's mother where defendant purposefully evaded service); *Minnesota Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 317, 324 (D. Minn. 1980) (service at defendant's residence in Minnesota was effective even though defendant was a citizen of California for purposes of diversity of citizenship); *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.*, 107 F.R.D. 665, 671-74 (S.D. Fla. 1985) (service on defendant's receptionist, later service on his cousin, and confirmed notice to his personal attorney was effective where, despite repeated efforts to serve defendant, he "avoided process in various ways, including never staying in one location for more than a day or two, and instructing his employees to give varying and conflicting stories about his residence and location"); *Capitol Life Ins. Co. v. Rosen*, 69 F.R.D. 83, 88 n.3 (E.D. Pa. 1975) (service effective where plaintiff complied with Rule 4(d), even though defendant claims he did not receive actual notice); *Rovinski v. Rowe*, 131 F.2d 687, 689 (6th Cir. 1942) (defendant was served in his home).

(holding service on individual via certified mail to a business address insufficient where plaintiff offered no proof that the defendant himself signed the return receipt); *Toms v. Hantman*, 530 F. Supp. 2d 188, 191 (D.D.C. 2008) (holding certified mail to defendant's business address insufficient where the return receipt was signed by someone other than the individual defendant); *Wilson-Greene v. Dep't of Youth Rehab. Servs.*, No. 06 Civ. 2262, 2007 WL 2007557, at *2 (D.D.C. July 9, 2007) (holding certified mail service insufficient where mailing was directed to defendant's business address, and plaintiff offered no evidence that the individual defendants signed for the mailings or that the return receipt signatories were authorized to accept service).

Plaintiffs offer no meaningful opposition to Defendants' showing of defective service, and thus cannot establish personal jurisdiction.[18]

Nor do Plaintiffs offer any basis for their request that the Court extend their time to serve the Defendants properly. *See* Opp. Br. at 31. As detailed in the Motion, this Court has already determined that Plaintiffs had ample time to complete service on the domestic defendants in this case. *See* Moving Br. at 66. Further, Plaintiffs' attempted service on business addresses (and one synagogue) unrelated to the Defendants, their failure to make any follow up service efforts despite receiving return receipts that were not signed by the Defendants, and their misleading reports to the Court that service had nevertheless been effected, indicate that Plaintiffs had no intention of diligently seeking to effect service. *See id.* at 66-67. Plaintiffs' opposition offers no

---

[18] Nor are plaintiffs entitled to conduct "limited discovery" on the issue of whether defendants have "engaged in evasion, deception, or trickery to avoid being served." Inasmuch as Plaintiffs cannot even demonstrate that they served the Defendants at their residences, as the law requires, Plaintiffs have no basis to assert "evasion." Any discovery would therefore be nothing more than a fishing expedition. *See, e.g.*, *Okolie v. Future Servs. Gen. Trading & Contracting Co., W.L.L.*, 102 F. Supp. 3d 172, 178 (D.D.C. 2015) (denying jurisdictional discovery where plaintiff had not alleged even a good faith basis to believe relevant facts would be discoverable and noting, "Discovery is not warranted 'where a plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction.'").

excuse for this failure.  As a result, Plaintiffs cannot demonstrate good cause for an extension of time to serve.  *See Colston v. First Guarantee Commercial Mortg. Corp.*, 665 F. Supp. 2d 5, 8 (D.D.C. 2009).

For the reasons stated above and in the Motion, Defendants Adelson, AIPAC, Shankman, Kohr, Levin-Abir, and Shoebat should be dismissed from this lawsuit.

## VIII.  CLAIMS AGAINST DEFENDANTS AIPAC, HOWARD KOHR, AND BRIAN SHANKMAN, AND SEPARATELY, DEFENDANT SHOEBAT, ARE BASED ON SPEECH PROTECTED BY THE FIRST AMENDMENT AND SHOULD BE DISMISSED

Plaintiffs state that they "agree with [defendants'] legal analysis that holds that you cannot ban speech that is an expression of ideas that merely offends."  Opp. Br. at 32.  Yet they proceed to argue that the speech engaged in by Defendants AIPAC, Howard Kohr, Brian Shankman and separately, Defendant Shoebat, does not merely offend, but "incites violence." Plaintiffs' argument on this point only reinforces the absurdity of the claim against these Defendants.

Plaintiffs offer no support for their assertion that any of the speech or activity engaged in by these Defendants constitutes unprotected speech.  Plaintiffs misguidedly rely on cases in which the Supreme Court addressed narrow limits to the First Amendment's protection, but these cases neither address the type of speech at issue here, nor do they extend those limits beyond a narrow class of exceptions.  For example, Plaintiffs cite *United States v. Stevens*, 559 U.S. 460 (2010), which addressed a First Amendment challenge to an animal cruelty law.  There, the Court declined to extend the "well-defined" and "narrowly limited classes of speech" that may be regulated as unprotected speech to include depictions of animal cruelty.  *See id.* at 468-69. Rather, the Court cautioned against "an ad hoc balancing of relative [] costs and benefits" of speech against its value, noting, "[t]he First Amendment itself reflects a judgment by the

American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it."  *Id.* at 470.  And, in contrast to *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949), *see* Opp. Br. at 32, there is no showing here that these Defendants engaged in speech "integral to criminal conduct."

### A.   Defendants AIPAC, Howard Kohr and Brian Shankman Engaged in Protected Lobbying Activity

With respect to Defendants AIPAC, Howard Kohr, and Brian Shankman, Plaintiffs do not deny that these Defendants were engaged in protected lobbying activity undertaken as a 501(c)(4) organization.  There is no question that lobbying is protected by the First Amendment. *See, e.g.*, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

Here, the Complaint lacks any allegations that would directly, or even indirectly, tie such lobbying activity to any criminal conduct. Rather, Plaintiffs devote a large portion of their Complaint to expressing disdain for the purported lobbying efforts undertaken by AIPAC and its supporters to pass anti-BDS legislation, which Plaintiffs describe as an effort to stop criticism of Israel's so-called "subjugation of the Palestinian people."  *See* Compl. ¶ 171; *see also id.* ¶ 22 (alleging that defendant Cuomo, with the support of Rabbi Hikind "signed up to be AIPAC's partner and the Israeli spokesperson on the BDS issue…."); ¶ 99 (alleging AIPAC's involve in anti-BDS legislation and "extensive lobbying work done by AIPAC officials") ¶ 167 (describing defendant Cuomo's alleged involvement in supporting anti-BDS legislation "prepared by AIPAC officials").

Even taken as true, these allegations of lobbying activity *in the United States* do not directly link to any unlawful violence that may have occurred *in Israel*. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (finding that, on a Rule 12(b)(6) motion to dismiss, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the Complaint). Plaintiffs, therefore, have not alleged any set of facts that would support a finding that these Defendants' protected speech in lobbying for changes to American law was otherwise meant to incite violence against the Palestinians overseas.

While Plaintiffs' Opposition purports to set forth a series of alleged activities that are said to demonstrate that "Defendants did much more than simply express their feelings about hating Palestinians," none of those activities have been specifically alleged as against Defendants AIPAC or Defendants Kohr or Shankman in the Complaint. *See* Opp. Br. at 33.[19] Nowhere in the Complaint do Plaintiffs specifically allege that these Defendants either directly or indirectly: "[f]inanced the purchase of firearms;" "[h]ired professional forgers to prepare fraudulent deeds;" "[b]ribed military officials to issue illegal land confiscation orders;"[20] "[b]locked ambulances so that wounded Palestinians would bleed out;" "[k]illed Palestinian children for sport;" or "[f]inanced land theft." *See id.*

Rather, Plaintiffs raise these unsupported claims for the first time in their Opposition. Even if these claims were based on reality (which they are not), this Court should not consider these "new facts" when ruling on Defendants' Motion to Dismiss. *BEG Investments, LLC v. Alberti*, 85 F. Supp. 3d 13, 25-26 (D.D.C. 2015) (finding that new facts may not be considered in

---

[19] As for Defendants Kohr and Shankman, there are only three references to them in Plaintiffs' 175-page Complaint.

[20] While Plaintiffs purport to cite the Complaint in support of this allegation, the paragraphs of the Complaint referenced in Plaintiffs' Memorandum do not otherwise pertain to or reference Defendants AIPAC, Kohr, or Shankman.

a plaintiff's brief in opposition to defendants' motion to dismiss).  Instead, the totality of allegations asserted against these Defendants in the Complaint demonstrates that they engaged in constitutionally-protected lobbying activity, which under no body of case law (outside the context of defamation) has ever served as a predicate for a legal claim, much less in the context of "aiding and abetting."  Accordingly, this Court should dismiss the Complaint in its entirety as against Defendants AIPAC, Kohr, and Shankman.

**B.      Statements Attributed to Defendant Shoebat Constitute Protected Free Speech And Do Not Support Any Legally Cognizable Claims Against Him.**

As for Defendant Shoebat, the allegations in the Complaint are limited to the following:

- He "advocates the national registration of Muslims."  Compl. at 12.

- In speaking, he aims to "(a) convince Americans that Palestinians are 'savages' and 'terrorists'; and (b) convince first responders to support the national registration of all Muslims."  *Id.* at 13.

- He has "warned first responders about the need to profile Palestinians because they are dedicated to inflicting acts of terrorism on the American population."  *Id.*

- He is a "'profiteer' [who] makes money by convincing Americans and Congressional members that Palestinians are responsible for terrorism and are not deserving of their own state."  *Id.*

- "[H]e spreads vile propaganda about Palestinian terrorists."  *Id.* ¶ 49.

- He "benefits from grants awarded by the Department of Homeland Security in its never-ending war on terror."  *Id.*

- He "educate[s] first responders about the dangers posed by Palestinian terrorists."  *Id.*

- He has "labeled Palestinians as terrorists."  *Id.* ¶ 56.

28

- He has "worked to frustrate the two-state solution, and believe[s] that all non-Jews should be forcibly removed from the OPT."  *Id.*

- He, along with Defendants Huckabee and Gingrich, claim that "Palestinians are not human beings, but 'beasts' and have played a significant role in the denationalization of the Palestinian civilian population."  *Id.*

- "[H]e is in favor of racial profiling for Muslims, and the way he makes money is to scare U.S. citizens located in the heartland, i.e. the Muslims are coming to take over your town and install Sharia law."  *Id.* ¶ 291.

- He has "abused the discretion afforded to Homeland Security to give out grants to individuals who are fighting the war against terrorism." *Id.* ¶ 298.

This is the sum total of what the Complaint alleges as to Defendant Shoebat.  The most charitable reading of these allegations does not come close to incitement of violence.  To the extent any of these allegations describe actual speech by Shoebat, as opposed to his alleged "beliefs," these are all expressions of opinion protected by the First Amendment.

With no plausible allegation of anything other than protected speech on Shoebat's part, Plaintiffs resort to speculating about what Shoebat *could* do.  They claim that U.S. government officials "with a single phone call . . . *can* pick up a Palestinian identified by Shoebat and have him summarily deported."  Opp. Br. at 33-34 (emphasis added).  Yet there is no allegation that Shoebat has "identified" anyone specifically (much less one of the Plaintiffs), or that, based on this "identification" anyone was deported.  Plaintiffs also claim that "Shoebat knows and intends that the immigration records of these Muslim individuals will be scrutinized, and they *can* be deported because of a missed comma or middle name."  *Id.* at 34.  Again, there is no allegation that any of this has actually occurred or that Shoebat had identified any specific person whose

29

immigration record was "scrutinized" and who was then deported. This is not even conjecture of what Shoebat may have done, but speculation of what he *could* possibly do.

In their Opposition Brief, Plaintiffs set forth a bullet point list of alleged "wrongs" they claim Defendants had engaged in. Opp. Br. at 33. None of these, according to the Complaint itself, has any application to Defendant Shoebat. The assertion that Shoebat "has progressed from using mere harassment tactics and curtailing free speech to open displays of criminal intent to incite violence," *id.*, is as nonsensical as anything in Plaintiffs' opposition. There are no allegations in the Complaint of any "harassment" by Shoebat, or of any "curtailment" by him of anyone's speech, or of any "intent to incite violence." All that he is alleged to have done is make speeches in which he said things the Plaintiffs don't like. And, importantly, none of the allegations concern speech directed at any particular Plaintiff. Rather, Shoebat is charged with expressing his opinions about Palestinians (and Muslims) generally as a group. The only remotely specific allegation is that Shoebat speaks to first responders in Iowa and the Dakotas about the "need to profile Palestinians" and "be on alert for Muslim terrorists."

Plaintiffs' opposition demonstrates that there is no cognizable legal theory that would render the statements attributed to Shoebat actionable. Speech protected by the First Amendment, as Shoebat's speech clearly is, cannot serve as a predicate for a legal claim, much less one as attenuated and implausible as "aiding and abetting dehumanization." The claim against Shoebat should be dismissed.

## CONCLUSION

For all of the foregoing reasons and those stated in Defendants' Motion, the Court should dismiss the Complaint as against Moving Defendants in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6).

Dated: October 20, 2020        Respectfully submitted,

By: */s/ Barry G. Felder*_____
Barry G. Felder (Bar No. 307736)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Tel: (212) 338-3540
Fax: (212) 687-2329
bgfelder@foley.com

Michael J. Tuteur (D.D.C. Bar No. D00202)
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
Tel: (617) 342-4016
Fax: (617) 342-4001
mtuteur@foley.com

*Counsel for Miriam Adelson*

By*: /s/ Rachel Hirsch*_____
/Signature with Permission
Rachel Hirsch (Bar No. 991122)
AIPAC
251 H Street, NW
Washington, D.C. 20001
Tel: (202) 639-5248
Fax: (202) 638-6349
rhirsch@aipac.org
Philip Friedman (Bar No. 421854)
FRIEDMAN LAW OFFICES PLLC
2001 L Street NW, Suite 400
Washington, DC 20036
Tel: (202) 293-4175
Fax: (202) 381-0395
psf@consumerlawhelp.com

*Counsel for AIPAC, Howard Kohr, and Brian Shankman*

By: _/s/ Stuart J. Roth_____
/Signature with Permission
Stuart J. Roth (Bar No. 475937)
Mark Goldfeder (D.D.C. Bar No. NY0273)
Benjamin Sisney (Bar No. 1044721)
THE AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, N.E.
Washington, D.C. 20002
Tel: (202) 546-8890
Fax: (202) 546-9309
goldfed@gmail.com
bsisney@aclj.org

*Counsel for Dov Hikind*


By: _/s/Mark D. Harris_____
/Signature with Permission
Mark D. Harris (Bar No. 445900)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
mharris@proskauer.com

Jennifer E. Tarr (D.D.C. Bar No. IL0028)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave. NW  Ste. 600 South
Washington, DC 20004-2533
Tel: (202) 416-6846
Fax: (202) 416-6899
jtarr@proskauer.com

*Counsel for Susan Levin-Abir*


By: _/s/Robert J. Tolchin_____
*/Signature with Permission*
Robert J. Tolchin (Bar No. NY0088)
THE BERKMAN LAW OFFICE, LLC
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
Tel: (718)855-3627
Fax: (718) 504-4943
rtolchin@berkmanlaw.com

Oleg Rivkin, Esq. (D.D.C. Bar No. NY236)
RIVKIN LAW GROUP PLLC
800 Third Avenue, Suite 2800
New York, New York 10022
Tel: (212) 231-9776
or@rivkinlawgroup.com

*Counsel for Walid Shoebat*